464 P.2d 363

**Allan B. WRIGHT, Appellant,**

**v.**

**James L. PALMER, Appellee.**

**No. I CA–CIV 1086.**

Court of Appeals of Arizona,
Division 1.
Department B.
Jan. 26, 1970.

Powers, Boutell, Fannin & Ridge, by William T. Boutell, Jr., Phoenix, for appellant.

Burns, Ferrin & Ehrenreich, by S. Paul Ferrin, F. Britton Burns, Phoenix, for appellee.

JACOBSON, Judge.

The Maricopa County Superior Court's granting of directed verdicts as to counter-defendant's claim of breach of covenant not to compete and claim of unfair

competition is called into question on this appeal.

Plaintiff-appellee, James L. Palmer, brought suit against defendant-appellant, Allan B. Wright, for failure to pay amounts due on a promissory note. The defendant counterclaimed, seeking various setoffs on the promissory note together with damages for the breach of an alleged covenant not to compete and for unfair competition. While the claims for breach of the covenant not to compete and for unfair competition had originally belonged to a corporation, these had been assigned by the corporation to the defendant prior to trial. The trial court directed verdicts in favor of the plaintiff on these latter two issues raised by defendant's counterclaim. The jury returned a verdict in favor of plaintiff for the stipulated amount due under the promissory note and attorney's fees in the sum of $21,332.04 and in favor of the defendant in the sum of $3,500.00 on his claim of setoff. The defendant does not raise any issue on appeal as to the correctness of the jury verdict but assigns as error only the trial court's action in granting the directed verdicts.

The facts necessary for a determination of these issues are as follows.

In the early 1950's plaintiff and defendant purchased all of the stock of an Arizona corporation engaged in the general printing business in Phoenix, Arizona. Under the terms of the purchase plaintiff and defendant each received 50 percent of the stock of the corporation and the name was changed to Palmer Printing Company. At the time of the purchase both plaintiff and defendant resided in California. After the purchase plaintiff moved to Arizona, became president of the corporation and its day-to-day manager. Defendant, although he remained in California until 1966, had complete access to all business records of the company and acted as a consultant to the company.

In 1965, the plaintiff became dissatisfied with the business arrangement between himself and the defendant and made a buy-or-sell offer to defendant concerning the stock of the corporation. In 1966 the defendant agreed to purchase plaintiff's stock in the corporation for the sum of $52,500.00. A portion of the purchase price was represented by the promissory note in litigation here. Other than the promissory note, there was no written contract of sale relating to this transaction. Although an attorney was contacted, his sole function was to prepare the promissory note and handle the transfer of stock and moneys paid.

During the period of time negotiations were being conducted for the purchase of plaintiff's stock, plaintiff leased a building to carry on a printing business of his own. Immediately after the sale, plaintiff opened a competitive printing business and solicited customers of the old business. In fact, according to plaintiff's own testimony, every customer in the new business in the two years following the sale had formerly been a customer of the old business. Defendant presented evidence as to the amount of his loss of business.

The defendant contends that, during the negotiations for the purchase of plaintiff's stock, an oral covenant not to compete in the printing business was entered into between plaintiff and defendant. The sole testimony to support such a covenant is as follows:

(testimony by the defendant, Mr. Wright):

"Q Was anything said during this conversation about Mr. Palmer's competing with Palmer Printing Company after he had sold his stock?

"A Yes.

"Q What was said and by whom?

"A I had asked him what his intentions were, what he had planned on doing. And he said he didn't know. And I said, 'Well, you are not planning on going into the printing business, are you?'

"And he said, 'I don't know.'

"And I said, 'Well, you know it isn't very smart of me to be talking to you if you are intending on going into the business again.'

"And he said, 'Well, I hadn't intended to do anything at this time.'

"And I said, 'Are you planning on taking a trip around the world,' or something to that effect, just in jest.

"And he said no, he just didn't know what he was going to do.

"Q  Did he say anything about opening a small printing shop or did you say anything to him about that?

"A  Later on.  He had said if he did decide to to into the printing business it would be on a very small scale and would in no way compete with Palmer Printing Company.

"Q  When you say 'later on' what do you mean?

"A  Whenever he decided what he was going to do.  At that time he didn't know what he was going to do.

\*   \*   \*   \*   \*   \*

"Q  Now in agreeing to buy Mr. Palmer's stock and in closing the transaction, did you rely on the statements that you have testified Mr. Palmer made about competition in the printing business?

"A  I did.

\*   \*   \*   \*   \*   \*

"Q  If you had known that Mr. Palmer was going to open a printing business that would compete with Palmer Printing Company would you have agreed to purchase his stock—

"A  I would not.

"Q  —in Palmer Printing Company at any price?"

We need not decide here whether an oral covenant not to compete is specifically enforceable or can be the basis for an action in damages, for in Arizona a covenant not to compete is only valid if it is reasonable as to the time the covenant shall run and is reasonable as to the area in which the competition shall not be allowed.  Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082 (1952); Lassen v. Benton, 86 Ariz. 323, 346 P.2d 137, opinion modified, 87 Ariz. 72, 347 P.2d 1012 (1959).

Assuming that the testimony quoted above gives rise to a covenant not to compete, it is silent as to any limitation of time and space and is therefore invalid.  The trial court correctly directed a verdict in plaintiff's favor on this portion of defendant's counterclaim.

Defendant next contends there was sufficient evidence to submit to the jury the question of plaintiff's unfair competition.  The basis of this "unfair competition" is defendant's allegation that plaintiff used "trade secrets" to solicit customers of the old business.  Although we are somewhat uncertain as to exactly what "trade secrets" are involved here, it appears that plaintiff, through his day-to-day operation of the Palmer Printing Company, became aware of the names of customers of the business, the type of printing required by them, generally when their orders would be placed and their financial condition.  These, defendant alleges, are trade secrets which plaintiff is prohibited from using, and he cites to the court several California cases and specifically Reid v. Mass Company, 155 Cal.App.2d 293, 318 P.2d 54 (1957).

Neither counsel have cited any Arizona cases on the principle of law applicable here and our independent research has failed to disclose any Arizona cases on the subject.  In such a case, we will look to the Restatement for the applicable rule.  Waddell v. White, 56 Ariz. 525, 109 P.2d 843 (1941).

The appropriate rule of law is given in Restatement of Torts sec. 757 (1939):

"One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

"(a) he discovered the secret by improper means, or

"(b) his disclosure or use constitutes a breach of confidence reposed in him by

the other in disclosing the secret to him, or

"(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or

"(d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake."

In Comment (b) on the above-quoted Restatement section, a definition of trade secrets is found:

"A trade secret may consist of any * * compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a * * * process of manufacturing * * * or a list of customers."

█ In applying this rather broad definition, the courts have had some difficulty. In general, however, the subject matter of the trade secret must be secret and be of such a character that it would not occur to persons in the trade with the knowledge of the state of the art. Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F.Supp. 250 (D.C.1958). Moreover, matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Aetna Building Maintenance Co. v. West, 39 Cal.2d 198, 246 P.2d 11 (1952).

Here, there is no evidence that plaintiff used unfair means in soliciting the old firm's customers; that he surreptitiously took customer's lists; that the customers solicited were in any manner unique from the general customer needing general printing services in Phoenix, Arizona; or that a particular process was taken by plaintiff which was unique to the old business. In all the cases cited by defendant to this court either one or all of such elements were present before the court would find that a "trade secret" was involved.

For example, in Reid v. Mass Company, supra, heavily relied upon by the defendant, the employee had access to a "master chart" of his employer's customers. This chart contained the names of particular businesses in certain towns who took ads in the employer's publication. Only one type of business per community was allowed to advertise in the publication. As the publication was continuing, the renewal dates of these advertisers were essential to the economical success of the publication. The former employee started a rival publication and would solicit advertisers of his former employer several weeks prior to the expiration date of their contracts with the former employer. As the California court stated:

"While it is obvious that the case at bar does not involve a retail delivery route, we believe that the principles laid down in the 'route cases' are here applicable.

* * * * * *

"While competing services might have access to the identity of some of plaintiffs' subscribers in a given town, the complete list of such subscribers throughout the state could be learned only by spending much time and money canvassing each town in which plaintiffs operated *or by using information learned by someone while in plaintiffs' employ.* Moreover, the approximate expiration dates of plaintiffs' contracts, which added substantially to the value of knowing the identity of plaintiffs' subscribers, was obviously unknown to the trade in this field." (Emphasis in original.) 318 P. 2d, at 60–62.

Here, there is no evidence that the customers of a general printing business, not specializing in a particular type of printing, were not well known to all other printing concerns operating in Phoenix. In fact, the lists of customers involved included well-known banks, title companies and manufacturers whose printing needs are obviously known to the trade.

**296**

We therefore hold that the general knowledge of the printing business and customers acquired by plaintiff as the long-time manager of Palmer Printing Company in Phoenix, Arizona, is not a "trade secret", the use of which would give rise to a claim by the defendant for unfair competition. In this regard we are impressed with the reasoning of the Maine Supreme Court in Roy v. Bolduc, 140 Me. 103, 34 A.2d 479, 149 A.L.R. 630 (1943):

"* * * (W)hile an employer, under a *proper restrictive agreement,* can prevent a former employee from using his trade or business secrets, and other confidential knowledge gained in the course of the employment, and from enticing away old customers, he has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired * * * through * * * instructions while in the employment. Public policy prohibits such undue restrictions upon an employee's liberty of action in his trade or calling." (Emphasis added.) 34 A. 2d, at 480.

We are also impressed in this case with the fact that the plaintiff and defendant were not in an employer-employee relationship, but were in essence co-owners of a business. In such a situation defendant, had he wished to prohibit the competition of which he now complains, was in an excellent position to insist upon a proper, written non-competitive contract as a condition to the purchase of the plaintiff's stock. This the defendant failed to do. The Court of Appeals, under the facts presented here, will not rectify defendant's oversight.

The trial court correctly granted plaintiff's motion for directed verdict as to defendant's counterclaim for unfair competition.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.