736 P.2d 1180

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Plaintiff/Appellee,

v.

**John POCHIRO and Karen Pochiro,**
his wife, Defendants/Appellants.

No. 2 CA–CV 5887.

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 5, 1987.

Reconsideration Denied March 10, 1987.

Review Denied May 12, 1987.

Fennemore, Craig, von Ammon, Udall & Powers by John D. Everroad, William L. Thorpe and E.J. Kotalik, Jr., Phoenix, for plaintiff/appellee.

Fred J. Pain, Jr. and James T. Milliken, Scottsdale, for defendants/appellants.

FERNANDEZ, Judge.

Appellant John Pochiro, a former employee of appellee Prudential Insurance Company of America, contends that the permanent injunction issued against him should be dissolved because the customer list he was found to have wrongfully retained is general knowledge in the trade and does not constitute a confidential list. We affirm.

Pochiro became a Prudential agent in October 1978 in Youngstown, Ohio. In May 1979 he transferred to the East Phoenix district where he was a debit agent until July 30, 1979, when he became a sales manager. In February 1982, he again became a debit agent, and in October 1982, he resigned from the company. This dispute arose because he sold policies of other companies to approximately 50 Prudential policyholders after he terminated his employment.

Each Prudential district agency is divided into geographical areas called "debits." Prudential policyholders in each debit are serviced by a debit agent. Prudential maintains records of its policyholders which are known as OPSRs (ordinary policy status record), DOPSRs (debit ordinary policy status record), and PSRs (policyholder status record). Debit policies are those with lower face values and lower and more frequent premium payments than ordinary policies. OPSRs and DOPSRs relate to life insurance policies and PSRs relate to casualty policies. All three types of records are computer-generated 3½ inch by 6½ inch cards, and each type contains a great deal of information about policyholders. Included in the information on the cards is the policyholder's name, address, date of birth, policy issue age, beneficiary, relationship to beneficiary, type of policy, face amount of policy, amount of premium, frequency of premium payments, cash surrender value, loan principal balance, loan interest rate, the current dividend, the amount of dividends on deposit, the insured's choice for the handling of dividends, and the type and cost of any riders to the policy. A new card is generated whenever there is a change in the information so that a new card on each policyholder is generally produced several times a year.

There was testimony at trial that the OPSRs and DOPSRs are kept by each debit agent in metal trays which fit into a special drawer in the desks provided by Prudential and that the drawers are to be kept locked when the trays are not being used. Prudential employees testified that new cards were to be filed in the trays, and old cards were to be torn up before they were discarded. There was also testimony from a number of witnesses that the cards were not treated confidentially, that agents kept them in places such as their homes and cars, that old ones were merely thrown in the garbage and that several people kept old ones for various reasons, one such reason being maintenance of a birthday file of policyholders assigned to the agent. The trial court found that, as a matter of practice, the cards were rarely treated confidentially.

In 1982 Pochiro apparently began to feel limited as an exclusive Prudential agent and began to sell policies of other insurance companies, although he knew that was not permitted by company rules. After several discussions with his superiors, Pochiro resigned and opened his own agency. Prudential then began to notice that a number of its policies were being replaced by Pochiro and two other former Pruden-

tial agents who were working with Pochiro for other companies. In January 1983 Prudential filed suit against Pochiro and the two former agents, seeking damages for unfair competition, breach of contract and intentional interference with contract, as well as injunctive relief. Prudential obtained a temporary restraining order and later, a preliminary injunction. The other two agents settled prior to trial.

Prudential later dropped its damage claims and proceeded to trial only on its claim for injunctive relief. After a trial to the court in early 1985 that spanned approximately two weeks, the court issued an injunction on August 27, 1985, which is to terminate at the end of 1987. It enjoins Pochiro from soliciting any insurance business from any existing Prudential policyholder who is reflected on any OPSR, DOPSR or PSR in Pochiro's possession at the time he terminated his employment or which he acquired afterwards, except for those policyholders with whom Pochiro was previously acquainted or whom he attempted to contact prior to termination of his employment.

■ If there is substantial evidence to support the issuance of an injunction, we will not substitute our judgment for that of the trial court. *Gillespie Land & Irrigation Co. v. Gonzalez*, 93 Ariz. 152, 379 P.2d 135 (1963). Absent a showing of a clear abuse of discretion in the trial court's ruling, we will not reverse. *Financial Associates, Inc. v. Hub Properties, Inc.*, 143 Ariz. 543, 694 P.2d 831 (App.1984); *Nordin v. Kaldenbaugh*, 7 Ariz.App. 9, 435 P.2d 740 (1967).

■ The agent's agreement which John Pochiro executed when he stepped down from his position as sales manager in February 1982 provided in part that: "all books, records, and supplies furnished to me by the Company shall be the property of the Company; and that, upon the termination of this Agreement, I will hand over said books, records, and supplies to a proper representative of the Company." Pochiro admitted that he retained a quantity of Prudential materials when he terminated his employment in October 1982. Among the materials he produced in response to a subpoena served upon him in January 1983 were OPSRs, DOPSRs and PSRs which covered policyholders in his debit and those of other agents, as well as application forms, envelopes, other blank forms and rate books. The trial court found that Pochiro was required to return the documents pursuant to his contract and that his failure to return them constituted a breach of his agreement.

The trial court also found that Pochiro did return his account book as he was required to do. Apparently the cards that Pochiro retained were old ones that had been replaced, but some of the cards that other agents had retained and had given to Pochiro were dated near the time of his termination. The court found that Pochiro "intended to use the records he retained in connection with his business after he left the plaintiff's employ" and concluded that his use, or threatened use, of the records constituted a wrongful use of information acquired during his employment with Prudential. We have reviewed the record and find that substantial evidence was produced at trial to support those findings.

Pochiro contends he cannot be enjoined from soliciting customers who appear on the retained OPSRs and DOPSRs because the list is considered to be general knowledge in the trade and because the information contained on it is basically public information, citing *Wright v. Palmer*, 11 Ariz. App. 292, 464 P.2d 363 (1970). We disagree. Pochiro produced evidence that some of the information on the OPSRs and DOPSRs was available to him in other places. There was evidence that Prudential's commission statements, which were issued to agents with their paychecks, included the names of policyholders, policy numbers, type of policy, the year the policy was purchased, and the amount of premium. There was also testimony that a book available at public libraries could be used to calculate an approximate amount of the dividends paid on a given policy by a given company in a given year as well as an approximate cash surrender value for a policy, provided enough information about

the policy were known. In addition, there was evidence that agents kept client files, which were not Prudential's property, that contained some information on policyholders. The evidence showed, however, that information such as the amount of any outstanding loans on a policy, the exact amount of dividends accumulated on a policy or their use to purchase additional insurance and the name and relationship of a beneficiary was available to an agent only through use of Prudential's records or through information supplied to individual policyholders on their particular policies.

Thus, the evidence does not support Pochiro's contention that the information compiled in Prudential's OPSRs and DOPSRs was available as general knowledge in the insurance trade, nor was there any evidence that the information is basically public information. This case is not like the situation that existed in *Wright v. Palmer*, supra, nor like that in *Master Records, Inc. v. Backman*, 133 Ariz. 494, 652 P.2d 1017 (1982), in which an employee merely took with him to his new job general information which he had obtained in his previous employment. Even though general information on Prudential's policies is available in public libraries, specific knowledge of specific policies and policyholders is available only through Prudential's collection of information. Pochiro's threatened use of the information can thus properly be enjoined. See *American Republic Insurance Co. v. Union Fidelity Life Insurance Co.*, 470 F.2d 820 (9th Cir.1972); *Reed v. Curry-Kropp-Cates, Inc.*, 61 Or. App. 520, 658 P.2d 531 (1983); *Dozar Agency, Inc. v. Rosenberg*, 218 A.2d 583 (Pa. 1966). Under § 757 of the Restatement of Torts (1939), applied in *Wright v. Palmer*, supra, a person is liable for use of a trade secret if "(b) his ... use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him...." The court's findings that Pochiro wrongfully retained the information with the intent to use it in connection with his business after he left Prudential is sufficient under that subsection.

The lack of any express agreement on the part of the employee not to disclose a trade secret is not significant. The law will import into every contract of employment a prohibition against the use of a trade secret by the employee for his own benefit, to the detriment of his employer, if the secret was acquired by the employee in the course of his employment.... A list of customers, if their trade and patronage have been secured by years of business effort and advertising and the expenditure of time and money, constitutes an important part of a business and is in the nature of a trade secret.

*Town & Country House & Homes Service, Inc. v. Evans*, 150 Conn. 314, 319, 189 A.2d 390, 393–394 (1963).

The definition of a trade secret is found in comment b to Restatement § 757 which reads as follows: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." See *American Republic Insurance Co. v. Union Fidelity Life Insurance Co.*, supra; *Reid v. Mass Co.*, 155 Cal.App.2d 293, 318 P.2d 54 (1957); *Unistar Corp. v. Child*, 415 So.2d 733 (Fla.App.1982). The evidence produced by Prudential with regard to the information that appears on OPSRs and DOPSRs requires the conclusion that at least a portion of the information was available nowhere else except through contact with an individual policyholder. Since the testimony was, and the court so found, that the information on the cards was useful to a salesman in soliciting new business, we find no abuse of discretion in the trial court's issuance of the injunction. Although the trial court concluded that Prudential had no proprietary right to the information contained on the OPSRs and DOPSRs but that it did have a proprietary interest in the documents themselves, we are not bound by that conclusion of law. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 650 P.2d 1222 (1982). A ruling will be upheld if the evidence supports it, even if the trial court reached the correct ruling for the wrong reason. *City of Phoenix v. Geyler*, 144 Ariz. 323, 697 P.2d 1073 (1985).

Pochiro has raised a number of additional arguments which revolve around his insistence that Arizona's insurance regulations require insurance policies to be available to purchasers through merit selection and open competition. We have no quarrel with that proposition but are unable to find it relevant to the issues on which this case was tried. Pochiro's apparent crusade against Prudential with regard to the proper approach to be utilized in selling life insurance policies is not our concern in this appeal.

We note that the trial court specifically did not enjoin Pochiro from soliciting Prudential policyholders with whom he had had some relationship while he was a Prudential agent and that the injunction was to last only 28 months. Since the injunction is a narrow one, we find it to be reasonable under the facts of this case and affirm its issuance.

Appellee will be awarded attorney's fees on appeal as requested upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (1986 Supp.), and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

HATHAWAY, C.J., and HOWARD, P.J., concur.