56 P.3d 56

**A.J. LAFARO, Plaintiff–Appellee,**

v.

**Dennis CAHILL, Defendant–Appellant.**

No. 1 CA–CV 01–0084.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 22, 2002.

Dean A. LeVay, Tempe, Attorney for Plaintiff–Appellee.

Osborn Maledon, P.A. By Warren J. Stapleton, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

GEMMILL, Judge.

¶ 1 Is an injunction against harassment that restricts protected political speech unconstitutional? May an Arizona statute that authorizes injunctions against harassment be given an interpretation that renders it constitutional? We answer these questions in the affirmative.

¶ 2 Dennis Cahill appeals from an injunction against harassment, issued by the trial court, that precludes him from initiating "in person" contact with A.J. LaFaro. For the reasons discussed herein, we vacate the injunction against Cahill.

## BACKGROUND

¶ 3 LaFaro was the chairman of Citizens to Recall Neil Giuliano ("CRG"), a group seeking to recall the Mayor of the City of Tempe. In late 2000, LaFaro and CRG members solicited signatures to place a vote to recall Mayor Giuliano on the next Tempe ballot. Cahill, a member of Tempe's City Council, publicly opposed CRG's efforts.

¶ 4 In November 2000, LaFaro petitioned for an *ex parte* injunction against Cahill prohibiting "harassment" pursuant to Arizona Revised Statutes ("A.R.S.") § 12–1809(R) (Supp.2000). LaFaro's petition alleged that Cahill had harassed him and other CRG members on three separate occasions by referring to LaFaro as a bigot, fascist, homophobe, and Nazi. The petition asserted that the first two incidents occurred in front of the Tempe Public Library on October 29, 2000 and October 31, 2000 while Lafaro was soliciting signatures for the recall campaign. The third alleged incident took place on Election Day, November 7, 2000, at the Pyle Adult Recreation Center, a Tempe polling center. The petition stated that Cahill had "demonstrated he could be physically violent" and requested the court to "review his arrest

record." [1] The petition sought to restrain Cahill from contacting LaFaro at his residence or from contacting LaFaro or any other CRG member at the Tempe Public Library or any other location where CRG members were collecting recall petition signatures.

¶ 5 In reliance on LaFaro's verified petition, Judge Jean Hoag entered an injunction enjoining Cahill from harassing LaFaro at his residence, or from contacting LaFaro in person, by telephone or in writing. Judge Hoag noted, "This order is granted solely because of the under oath testimony of Plaintiff regarding the series of acts [on] Oct. 29 and Oct. 31 re: obscenities directed by defendant at plaintiff."

¶ 6 Cahill moved to quash the injunction based on factual inaccuracies in the petition and his First Amendment right to free speech. LaFaro opposed the motion to quash, and the case was assigned to Judge Cheryl Hendrix, who held an evidentiary hearing on the matter. Judge Hendrix found harassment under A.R.S. § 12–1809 because the comments "made by Mr. Cahill to Mr. LaFaro could be found annoying by a reasonable person." She modified the original injunction, ordering Cahill not to initiate "in person" contact with LaFaro. Cahill timely appealed from the modified injunction.

## ANALYSIS

### This Court's Jurisdiction

■ ¶ 7 We first address LaFaro's contention that the modified injunction does not infringe upon Cahill's "substantial rights" and therefore constitutes a non-appealable protective order. LaFaro cites a legal encyclopedia as authority for his argument regarding the non-appealablity of an injunction. Although this argument reflects an older practice in Arizona, *see Bogan v. Pignataro,* 3 Ariz. 383, 383, 29 P. 652, 652 (1892), our modern statute explicitly permits the appeal of injunctions. A.R.S. § 12–2101(F)(2) (1994); *see also Transport Workers Union,*

---

**1.** At the December 20, 2000 evidentiary hearing before Judge Hendrix, LaFaro admitted that he did not know whether Cahill in fact had an arrest

record. Cahill also testified at this hearing and stated that he has never been arrested.

Local 502, AFL–CIO v. Tucson Airport Auth., Inc., 11 Ariz.App. 296, 298, 464 P.2d 367, 369 (1970) (restraining order continued in effect after motion to dissolve becomes appealable preliminary injunction); Bulova Watch Co. v. Super City Dep't Stores of Ariz., Inc., 4 Ariz.App. 553, 555, 422 P.2d 184, 186 (1967) (appeal may be taken from order granting or refusing to grant injunction at any stage of proceeding in which application for injunction is made).

¶ 8 LaFaro also argues that the injunction is not a final, appealable order because the trial court left open the possibility of modifying the injunction should Cahill petition for permission to debate LaFaro in a public forum. The fact an injunction may be modified, however, does not defeat its appealability. See A.R.S. § 12–2101(F)(2)(1994). Therefore, we conclude that the injunction against harassment is an appealable order, and we have jurisdiction over this case pursuant to A.R.S. §§ 12–120.21 (1992) and 12–2101(F)(2).

### Mootness

■ ¶ 9 As an additional preliminary consideration, we address a potential concern about mootness. The injunction, issued in December 2000, did not include an expiration date, but A.R.S. § 12–1809(J) states that an injunction issued pursuant to that section "expires one year after service on the defendant." The record provided to us does not reveal the date of service nor whether the injunction has expired or was modified or extended. If the injunction has expired, the issues raised may be technically moot. But we choose to exercise our discretion to address these issues because the use of an injunction to restrict political speech is an issue of great public importance that is capable of evading review. See, e.g., Fraternal Order of Police v. Phoenix Employee Relations Bd., 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982) ("We will make an exception, however, to consider a question of great public importance or one which is likely to recur even though the question is presented in a moot case."); see also Turf Paradise, Inc. v. Ariz. Racing Comm'n, 160 Ariz. 241, 242, 772

P.2d 595, 596 (App.1989)("one-year permit is of such relatively short duration that appellate review may be thwarted ...". Having resolved these questions regarding our consideration of this appeal, we now address the merits of this case.

### LaFaro's Failure to Demonstrate a "Series of Acts"

■ ¶ 10 Cahill challenges the trial court's finding of harassment and corresponding grant of the injunction. We review orders granting injunctions under a clear abuse of discretion standard. Ariz. Dep't of Pub. Safety v. Superior Court, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997). The misapplication of the law to undisputed facts is an example of an abuse of discretion. Id. (citing City of Phoenix v. Superior Court (Laidlaw Waste Sys.), 158 Ariz. 214, 217, 762 P.2d 128, 131 (App.1988)).

¶ 11 LaFaro sought an injunction pursuant to A.R.S. § 12–1809, which permits issuance of an injunction against harassment if the court finds

> reasonable evidence of harassment of the plaintiff by the defendant during the year preceding the filing of the petition or that good cause exists to believe that great or irreparable harm would result to the plaintiff if the injunction is not granted ....

A.R.S. § 12–1809(E). The statute defines "harassment" as

> a series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose.

A.R.S. § 12–1809(R).

¶ 12 The plain language of A.R.S. § 12–1809 requires a finding that Cahill engaged in a "series of acts" of harassment that were "directed at a specific person," i.e., LaFaro. Id. The trial court received evidence of two instances of contact between the parties: one on October 29, 2000; the other on October 31, 2000.[2] We have examined the record to

---

**2.** Regarding the third incident alleged in his peti-

tion, LaFaro admitted during the evidentiary

determine if the required finding of a "series of acts" of harassment is supported by substantial evidence. *Prudential Ins. Co. of Am. v. Pochiro,* 153 Ariz. 368, 370, 736 P.2d 1180, 1182 (App.1987) (appellate court will not disturb injunction supported by substantial evidence).

¶ 13 Both parties acknowledge that Cahill and LaFaro had no direct contact or communication on October 29, 2000. Rather, that incident concerned a conversation between Cahill and a Ms. Martelli. Cahill approached Martelli as she was leaving the CRG petition table and he was leaving the library. Cahill and Martelli spoke about CRG's recall effort as they walked to their vehicles. LaFaro overheard part of this conversation in which Cahill denounced CRG's efforts and allegedly used words such as "bigot," "fascist," and "homophobe" to describe LaFaro. LaFaro was not a party to this conversation, and Cahill was not talking to LaFaro. Although LaFaro may have overheard a segment of that conversation, Cahill's communication does not satisfy the statutory definition of harassment, which requires a harassing act to be "directed at" the specific person complaining of harassment. A.R.S. § 12–1809(R). While Cahill was talking about LaFaro and expressing his opinion of the recall effort, his comments were "directed at" Martelli, not Lafaro.[3]

¶ 14 The incident on October 31, 2000 did involve a conversation between Cahill and LaFaro. A witness testified that on that day, he heard Cahill say directly to LaFaro, "You're a bigot, LaFaro," while LaFaro was soliciting signatures for the recall campaign. LaFaro claims Cahill called him a "bigot, homophobe, fascist, and Nazi." Even assuming Cahill's statements to LaFaro constituted "harassment" under the statute (an issue we do not reach), this conversation was only one act directed at LaFaro, not the "series of acts" required for injunctive relief under A.R.S. § 12–1809(R). At a minimum,

the "series of acts" condition requires two incidents. *See Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (if the statutory language is clear and unambiguous, we apply it without resorting to other methods of interpretation); *see also Petersen v. State,* 930 P.2d 414, 424 (Alaska Ct.App.1996) ("repeated acts" in anti-stalking statute means more than once); *State v. Saunders,* 886 P.2d 496, 497 (Okla.Crim.App. 1994) ("repeatedly" in criminal stalking statute requires more than one act); *State v. Alvarez,* 74 Wash.App. 250, 872 P.2d 1123, 1129 (1994) ("course of conduct" in civil stalking statute defined as a "series of acts," meaning more than one).

¶ 15 Section 12–1809 is intended to address a situation in which a person directs harassing conduct at his target repeatedly. A.R.S. § 12–1809(R); *see Petersen,* 930 P.2d at 424, *Saunders,* 886 P.2d at 497, *Alvarez,* 872 P.2d at 1129. The statute permits courts to enjoin such harassment, because a person should not have to endure repeated frightening, dangerous or otherwise alarming and intrusive personal conduct that serves no legitimate purpose. A.R.S. § 12–1809(R). The trial court thus erred by entering the injunction against Cahill, because LaFaro failed to prove a "series of acts," one of the required statutory elements.[4]

### The Injunction's Restriction of Political Speech

¶ 16 Sound judicial policy ordinarily motivates us to avoid addressing constitutional issues unless absolutely necessary to resolve a case. *City of Tempe v. Outdoor Sys., Inc.,* 201 Ariz. 106, 109, ¶ 7, 32 P.3d 31, 34 (App.2001). LaFaro failed to establish the statutory requirements for relief under A.R.S. § 12–1809, *see* ¶¶ 10–15, *supra,* and that deficiency is sufficient to vacate the injunction. However, we feel compelled to address the unconstitutional application of § 12–1809 to permit an injunction placing

hearing that no contact with Cahill occurred on November 7, 2000. Instead, that incident involved Cahill and another CRG volunteer. LaFaro was not present.

3. Our conclusion is based on the facts of this case. We are not suggesting that a third-party

conversation could never constitute "directed at" harassment pursuant to A.R.S. § 12–1809.

4. In light of this conclusion, we do not reach Cahill's additional statutory argument that, as a matter of law, the evidence did not establish that he had harassed LaFaro.

significant restrictions on Cahill's freedom of speech. *See Aitken v. Indus. Comm'n,* 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995) (recommending deviation from policy of restraint on constitutional evaluation only for "strong reason and under extraordinary circumstances"). The injunction against Cahill was unconstitutionally broad because of its infringement of his First (and Fourteenth) Amendment right to free speech [5] as well as Cahill's right to free speech under the Arizona constitution.[6] We conclude that § 12–1809 cannot be used to restrict protected political speech. *See KZPZ Broad., Inc. v. Black Canyon City Concerned Citizens,* 199 Ariz. 30, 36, ¶ 23, 13 P.3d 772, 778 (App.2000) (political speech entitled to First Amendment protection "at its zenith") (quoting *Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 186–87, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999)).

¶ 17 Because the injunction prohibited Cahill from any "in person" contact with LaFaro, Cahill was restrained from engaging in political speech expressing his disagreement with LaFaro's recall effort, while in LaFaro's presence. The injunction includes no provisions designed to limit its infringement of political speech. Both parties agree that "[w]hen ... evaluating content-neutral *injunctions* that restrict speech[,] ... [t]he test ... is 'whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest.' " *Schenck v. Pro–Choice Network of Western N.Y.,* 519 U.S. 357, 371, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (quoting *Madsen v. Women's Health Center,* 512 U.S. 753, 765, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994)). The injunction against Cahill was content-neutral because the injunction barred any "in person" contact with LaFaro and was therefore applicable "[w]ithout regard to the message conveyed." *State v. Baldwin,* 184 Ariz. 267, 271, 908 P.2d 483, 487 (App.1995). We need not, however, determine what government interest is served by the injunction and balance that interest against Cahill's speech rights because this injunction prohibits any and all "in person" contact between LaFaro and Cahill, and *Madsen* clearly rejected injunctions that ban all "uninvited approaches." The injunction is therefore overbroad and unconstitutionally restricts Cahill's freedom of speech.

¶ 18 The *Madsen* petitioners challenged an injunction issued against abortion protesters who were protesting outside an abortion clinic. 512 U.S. at 757, 114 S.Ct. 2516. The injunction enjoined the protestors "from physically approaching any person seeking the services of the [c]linic unless such person indicate[d] a desire to communicate by approaching or by inquiring of the [protestors] ...." *Id.* at 760, 114 S.Ct. 2516. The Court noted the difficulty of justifying "a prohibition on *all* uninvited approaches of persons ... regardless of how peaceful the contact may be, without burdening more speech than necessary to prevent intimidation and to ensure access to the clinic." *Id.* at 774, 114 S.Ct. 2516. The Court then held that "[a]bsent evidence that the [enjoined party's] speech is independently proscribeable (*i.e.,* fighting words or threats), or is so infused with violence as to be indistinguishable from a threat of physical harm, [such a] provision cannot stand." *Id.* (citation omitted). *See also Schenck,* 519 U.S. at 373–74, 117 S.Ct. 855 (applying *Madsen's* prohibition of enjoining uninvited approaches).

¶ 19 LaFaro attempts to avoid the holdings of *Schenck* and *Madsen* by distinguishing the facts of those cases from the case at bar. In his brief, he argues that the holdings in *Madsen* and *Schenck* are limited to only those injunctions that contain "prohibitions by unknown, unnamed individuals against the approach by other unknown individuals ..." LaFaro claims that the *Madsen* and *Schenck* injunctions were simply too vague to be enforced, but the injunction against Cahill is

---

5. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

6. "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Ariz. Const. art. II, § 6.

specific and easily enforced. LaFaro, however, fails to cite any passage from either *Madsen* or *Schenck* commenting on the vagueness of those injunctions, nor do we find any. He also fails to address the specific language in *Madsen* and *Schenck* regarding the need for courts to tailor such injunctions to minimize the burden on speech. *Madsen*, 512 U.S. at 774, 114 S.Ct. 2516; *Schenck*, 519 U.S. at 373–74, 117 S.Ct. 855. LaFaro's attempt to distinguish the facts of *Madsen* and *Schenck* from the case at bar is unpersuasive.

¶ 20 The trial court issued this injunction, which prevents Cahill from initiating contact with and speaking to LaFaro regarding any topic *including* a political matter in a public place, because Cahill's speech "could be found to be annoying by a reasonable person." In rejecting such an application of § 12–1809, we reflect on the following language from *Madsen:*

> "As a general matter ... in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment."

512 U.S. at 774, 114 S.Ct. 2516 (quoting *Boos v. Barry*, 485 U.S. 312, 322, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)). *See also Tucson Elec. Power Co. v. Round Valley Unified School Dist. No. 10*, 163 Ariz. 532, 534, 789 P.2d 399, 401 (App.1990) ("[W]e reject the breathtaking proposition that courts may control political speech through the imposition of some duty of fairness. The remedy for 'unfair' speech is more speech, not the silencing of the speaker ..."). Therefore, in addition to the factual insufficiency of LaFaro's petition, we vacate the injunction because use of § 12–1809 in this case impermissibly limited Cahill's right to freedom of speech.

### Construing A.R.S. § 12–1809 in Harmony with Free Speech

¶ 21 Cahill asserts that § 12–1809 is facially overbroad and should be struck down in its entirety as unconstitutional. However, legislative enactments carry a strong presumption of constitutionality. *State v. Takacs*, 169 Ariz. 392, 395, 819 P.2d

978, 981 (App.1991). We attempt to construe statutes with "a reasonable and constitutional meaning" whenever possible in order to remove potential doubts regarding the statute's viability. *McGovern v. McGovern*, 201 Ariz. 172, 178, ¶ 20, 33 P.3d 506, 512 (App.2001) (citing *Hansson v. Ariz. Bd. of Dental Exam'rs*, 195 Ariz. 66, 69, ¶ 11, 985 P.2d 551, 554 (App.1998)). Thus, courts should consider whether a limiting construction would cure a statute's possible constitutional infirmity. *Takacs*, 169 Ariz. at 395, 819 P.2d at 981 (citing *State v. Steiger*, 162 Ariz. 138, 781 P.2d 616 (App.1989)).

¶ 22 Because legislative enactments are presumed to be constitutional, we also presume that the legislature would not intentionally enact an unconstitutional statute. *See Roylston v. Pima County*, 106 Ariz. 249, 250, 475 P.2d 233, 234 (1970). We can readily conceive of legitimate and beneficial uses for the remedy provided by A.R.S. § 12–1809. The legislature likely intended A.R.S. § 12–1809 to provide a civil (*i.e.*, noncriminal) method to help protect citizens from stalkers or perpetrators of domestic violence. But the protection of citizens from harassment—a legitimate and laudable goal—is not incompatible with the protection and exercise of free speech, especially with a common-sense interpretation of the statute.

¶ 23 The definition of harassment in § 12–1809 describes annoying, alarming and harassing behavior that "serves no legitimate purpose." A.R.S. § 12–1809(R). We need not declare § 12–1809 unconstitutional in all its potential applications. Instead, we construe § 12–1809's definition of harassment—conduct that "serves no legitimate purpose"—to *exclude* pure political speech. We are confident that the legislature did not intend § 12–1809 to be used for issuance of injunctions restricting political speech. Political speech must be given strong protection in our democracy. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 111, 67 S.Ct. 556, 91 L.Ed. 754 (1947) ("political debates ... are the essence of our democracy") (Black, J., dissenting). Our construction of A.R.S. § 12–1809 is intended to prevent fu-

ture improper application of this statute to protected political speech.[7]

## CONCLUSION

¶ 24 We vacate the injunction against Cahill and order entry of judgment against LaFaro. We award Cahill his taxable costs incurred on appeal.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and NOEL FIDEL, Judge.

---

7. State legislatures may explicitly provide that injunctions against harassment or stalking will not be issued to restrain constitutionally protected conduct. *See, e.g.,* Haw.Rev.Stat. § 604–10.5(i) (2001) ("Nothing in this section shall be construed to prohibit constitutionally protected activity."); Mo. Ann. Stat. § 455.010(10) (West 2002) ("Constitutionally protected activity is not included within the meaning of 'course of conduct.' "). The Arizona legislature had previously included such a limitation in the civil harassment statute. Prior to a 1996 amendment, "constitu-

tionally protected activity" was expressly excluded from the conduct that could justify issuance of an injunction against harassment. A.R.S. § 12–1809(Q)(1) (1994) (amended 1996). The definition of harassment for civil purposes was rewritten in 1996, but the legislative history available to us does not reveal why the language pertaining to "constitutionally protected activity" was deleted. Whatever the reason, we do not attribute to the legislature any intention to authorize unconstitutional injunctions.