
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANAGEMENT AND ENGINEERING TECHNOLOGIES INTERNATIONAL, INC., a Texas corporation, | No. 10-17784 |
| Plaintiff - Appellee, | D.C. No. 4:06-cv-00077-JMR |
| v. | MEMORANDUM[*] |
| INFORMATION SYSTEMS SUPPORT, INC., a Maryland corporation, | |
| Defendant - Appellant, | |
| and | |
| ROSS ROMEO, | |
| Defendant. | |

| | |
|---|---|
| MANAGEMENT AND ENGINEERING TECHNOLOGIES INTERNATIONAL, INC., a Texas corporation, | No. 10-17888 |
| Plaintiff - Appellant, | D.C. No. 4:06-cv-00077-JMR |
| v. | |
| INFORMATION SYSTEMS SUPPORT, | |

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

INC., a Maryland corporation,

Defendant - Appellee,

and

ROSS ROMEO,

Defendant.

Appeals from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted April 20, 2012
San Francisco, California

Before: SCHROEDER, THOMAS, and GRABER, Circuit Judges.

Information Systems Support, Inc. (ISS), appeals the judgment entered against it after a jury trial. We affirm in part, vacate in part, and remand for further proceedings. In a cross-appeal, Management and Engineering Technologies International, Inc. (METI), challenges the denial of its motions for exemplary damages and attorney fees. We affirm. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

I

We review de novo the district court's denial of ISS's motion for judgment as a matter of law. We will uphold the jury's verdict so long as "there is evidence

adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (internal quotation marks omitted); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004). A general verdict may stand if the court is "able to construe a general verdict as attributable to a theory submitted to the jury that was viable." *Webb v. Sloan*, 330 F.3d 1158, 1166-67 (9th Cir. 2003).

The evidence was sufficient to support METI's theory that its profit margin, as well as its general and administrative expense rates, constituted trade secrets under Ariz. Rev. Stat. § 44-401(4). METI's president testified that METI carefully guarded this confidential financial information by (1) keeping printed versions of its financial information in a vault at its corporate offices, (2) password protecting its electronic documents so that the files were accessible only to those who had signed a non-disclosure agreement, and (3) stamping a "confidential, non-disclosure" notice on every page of every government contract proposal. He further testified that this confidential financial information would have been economically valuable to a competitor like ISS seeking to out-compete METI in a bid for a lucrative contract. METI's expert witness Mark Peterson confirmed the value of this information. Thus, sufficient evidence supported the conclusion that

3

METI's profit margin, as well as its general and administrative expense rates, were economically valuable and reasonably safeguarded. *See* Ariz. Rev. Stat. § 44-401(4); *see also Enterp. Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1068 (Ariz. Ct. App. 1999) ("The threshold determination [of] whether to protect information as a trade secret . . . depends upon the nature of the information and the circumstances surrounding its secrecy and the maintenance thereof.").

METI also presented direct and inferential evidence sufficient to support its assertion that ISS misappropriated these particular trade secrets. *See* Ariz. Rev. Stat. § 44-401(2). Just before his departure from METI to join ISS, employee Ross Romeo downloaded thousands of confidential financial documents onto multiple flash drives. Romeo used some of this information in a PowerPoint presentation delivered to ISS staff at an executive planning meeting. ISS saved this presentation on its shared network and continued to reference the information in later strategy discussions. ISS then later sold all of its assets, including the computers containing METI's profit margin and expense rates, to a larger firm that participated in a bid against METI.

Thus, sufficient evidence supported the jury's finding that ISS misappropriated METI's trade secrets. Although ISS argues in the alternative that it simply possessed, but did not use or disclose METI's trade secrets, the jury was

4

not required to believe this rendition of the facts, and we may not substitute our view of the evidence for that of the jury's. *See Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *see also Go Daddy Software*, 581 F.3d at 961.

## II

The district court did not abuse its discretion in admitting the testimony of Mark Peterson, METI's expert witness. At the time of trial, Peterson was the Chief Executive Officer of his own intellectual property consulting company and had more than two decades of experience valuing intellectual property in damages litigation and for licensing transactions. Peterson thus satisfied the threshold requirements provided in Rule 702 of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

## III

We conclude that the evidence supports the jury's decision to award METI damages under a reasonable royalty theory of liability. Arizona law permits a complainant to recover damages for misappropriation under this theory "by imposition of liability for a reasonable royalty" resulting from "a misappropriator's

5

unauthorized disclosure or use of a trade secret." Ariz. Rev. Stat. § 44-403(A).

Here, the jury awarded damages because it found that METI had suffered a harm

when ISS used its trade secrets for strategic planning purposes. We have no cause

to disturb the application of this liability theory.

We conclude, however, the evidence does not support the amount of

damages that the jury awarded to METI. Although, as we have discussed, the

evidence was sufficient to support a trade secret theory founded on the

misappropriation of confidential financial information, that theory was not the sole

basis upon which METI claimed damages. METI also relied on trade secret

theories that failed as a matter of law because they rested on public information.

*See Ehmke*, 3 P.3d at 1069 ("[M]atters that are public knowledge are not

safeguarded as trade secrets.") (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S.

470, 475 (1974)).

In particular, METI contended that its employee roster was a trade secret,

but testimony at trial revealed that the roster was neither classified nor the subject

of any particular effort to safeguard its secrecy. Indeed the identities and positions

of the employees on the roster were generally known to those working at the

government facility, and only a fraction of those listed were METI employees.

The employee roster was therefore not a trade secret under Ariz. Rev. Stat. § 44-

401(4). Similarly, METI's ranking by Carnegie Mellon's Capable Maturity Model Integration program did not constitute a trade secret. The Carnegie Mellon program is an industry-wide "process improvement" model. METI's ranking in this program was available to the public and easily accessible through an internet search. *Cf. Wright v. Palmer*, 464 P.2d 363, 366 (Ariz. Ct. App. 1970) (A trade secret must be "of such a character that it would not occur to persons in the trade with the knowledge of the state of the art").

At trial, Peterson did not apportion value among the legally valid and the legally invalid alleged trade secrets. Rather, he testified about the hypothetical negotiated price that ISS would have paid for *all* of the information alleged to be trade secrets. Peterson also specifically conceded that an adjustment of the damages amount would be required if some of the trade secret theories were legally insufficient. Accordingly, the evidence was insufficient to support the amount of the jury's damages award. *Cf. Harper v. City of Los Angeles*, 533 F.3d 1010, 1028-29 (9th Cir. 2008) (upholding jury award "[u]nless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork") (internal quotation marks omitted). We are therefore compelled to vacate the damages award and remand the matter for further proceedings.

IV

The district court did not err in denying METI's motion for exemplary damages pursuant to Ariz. Rev. Stat. § 44-403(B). Arizona law provides that a court *may* award exemplary damages if willful and malicious misappropriation occurred. The district court decided not to make such an award here, stating that "[t]he jury declined to grant punitive damages . . . and the Court will not take this opportunity to do so." Contrary to METI's argument, we do not construe this comment to mean the district court applied an incorrect evidentiary standard. *Cf. Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1111-12 (9th Cir. 2001) (holding that the district court erred by refusing to consider motion for exemplary damages on basis that jury had decided not to award punitive damages). Nor do we conclude that the district court erred in denying METI's motion for attorney fees under Ariz. Rev. Stat. § 44-404. Like Arizona's provision regarding damages awards, this statute is permissive and METI offers no credible arguments about how the district court might have abused its discretion in denying the fee request.

**AFFIRMED in part; VACATED in part; and REMANDED. The parties shall bear their own costs on appeal.**