NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KARLA KARINA LU, *Plaintiff/Appellee,*

*v.*

LUIS WASHINGTON LU, *Defendant/Appellant.*

No. 1 CA-CV 25-0395

FILED 02-23-2026

Appeal from the Superior Court in Maricopa County
No.  CV2025-000256
The Honorable Mary Collins Cronin, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Genesis Legal Group, Gilbert
By Ryan P. Claridge
*Co-Counsel for Plaintiff/Appellee*

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Plaintiff/Appellee*

DeSoto Law Firm, Phoenix
By Rita E. DeSoto
*Co-Counsel for Plaintiff/Appellee*

Law Office of Dana B. Michaels PLLC, Phoenix
By Dana Beth Michaels
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

---

**C A T L E T T**, Judge:

**¶1** Luis Lu ("Luis") appeals the superior court's injunction against harassment against him as to Karla Lu ("Karla"). Because the record supports that Luis harassed Karla on at least two occasions, the court did not abuse its discretion by issuing the injunction. We affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Luis is Karla's father-in-law. On January 3, 2025, Karla petitioned for an injunction against harassment against Luis, alleging he harassed her on three occasions in December 2024. The court granted the injunction *ex parte* the same day. Karla served the injunction on Luis on January 10, 2025. Two months later, Luis requested a hearing to contest the injunction.

**¶3** At that hearing in April 2025, Karla testified that on December 18, she called police during a domestic dispute with her husband, who then summoned his mother to the home; Luis came along. She explained that, at her request, police told Luis to remain in his vehicle, but that she could see his face, and he appeared "angry" and "[v]ery mad, very upset" ("the vehicle incident"). She alleged Luis had covered up her husband's domestic abuse for years, so his facial expressions made her fear for her safety.

**¶4** Luis responded that his son called to say that Karla had called the police and asked Luis to "come home right away." He said that, upon arriving, he followed police officers' requests to remain in his vehicle, and he therefore had no contact with Karla.

**¶5** Next, Karla testified that on December 25, she was seated at a restaurant with friends when Luis arrived, recorded a video of her with his

2

phone, and told her that her children were waiting for her at home ("the restaurant incident"). The court viewed the video. Karla testified that this incident put her on notice she "was being followed" because nobody knew where she was, and that she "was very scared." She testified that she was surprised to see Luis at the restaurant and he had no reason to be there other than to confront her.

¶6 Luis acknowledged that he drove to the bar and grill where Karla was located and told her—from about ten feet away and in a calm, non-threatening way—that her children were waiting for her at home. He also admitted he recorded this interaction but that he does not normally "go around recording people."

¶7 Finally, Karla testified that on December 30, about thirty minutes after police removed her husband from the home for violating an order of protection, Luis "showed up on the courtyard" and "pound[ed]" on her door in a "rage" ("the courtyard incident"). She stated that she was "terrified." Karla said Luis had no reason to be there, that they had not spoken in three years, and that she believed he intended to scare her.

¶8 Luis admitted going to Karla's home on December 30, 2024. But he denied pounding on the door, that Karla asked him to leave, or that the police contacted him after. When asked about his relationship with Karla, Luis agreed they had not spoken in three years.

¶9 The court found "by a preponderance of the evidence that [Luis] has committed acts of harassment" and "that good cause exists to continue the Injunction Against Harassment[.]" Regarding the restaurant incident, the court said "I see no legitimate purpose for him going and approaching her on Christmas Day. . . . So I am leaving the injunction in place as to the Plaintiff." And about the courtyard incident, the court said Luis "possibly pound[ed] on the door" but also that "[Luis] denies he did that." The court continued the injunction.

¶10 Luis timely appealed; we have jurisdiction. A.R.S. § 12-2101(A)(5)(b); Ariz. R. Protective Ord. P. 42(a)(2).

## DISCUSSION

¶11 As a preliminary matter, an injunction against harassment expires one year after service, even when modified during that year. A.R.S. § 12-1809(J). So the injunction at issue has expired. But because an injunction against harassment carries "significant collateral legal and reputational consequences," an injunction's expiration does not render an

appeal moot. *See Cardoso v. Soldo*, 230 Ariz. 614, 619 ¶ 14 (App. 2012) (applying the collateral consequences exception to mootness in the context of an expired order of protection).

**¶12** We turn to the merits of Luis' appeal. We review the issuance of an injunction against harassment for an abuse of discretion. *LaFaro v. Cahill*, 203 Ariz. 482, 485 ¶ 10 (App. 2002). A court abuses its discretion if "it commits an error of law in the process of reaching a discretionary conclusion or 'when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision.'" *Mahar v. Acuna*, 230 Ariz. 530, 534 ¶ 14 (App. 2012) (quoting *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 19 (App. 2009)). "If there is substantial evidence to support the issuance of an injunction, we will not substitute our judgment for that of the trial court." *Prudential Ins. Co. of Am. v. Pochiro*, 153 Ariz. 368, 370 (App. 1987). Substantial evidence is "relevant evidence from which a reasonable mind might draw a conclusion." *In re Mustonen's Est.*, 130 Ariz. 283, 285 (App. 1981). "[W]e may affirm on any ground supported by the record." *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 403 ¶ 25 (App. 2000).

**¶13** Harassment is defined as a "series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose." A.R.S. § 12-1809(T)(1)(a). A series of acts under A.R.S. § 12-1809(T)(1)(a) means at least two events. *Martinez v. Estes*, 258 Ariz 354, 357 ¶ 8 (App. 2024); *LaFaro*, 203 Ariz. at 486 ¶ 14; Ariz. R. Protective Ord. P. 25(b). We review "the record to determine if the required finding of a series of acts of harassment is supported by substantial evidence." *LaFaro*, 203 Ariz. at 485–86 ¶ 12 (internal citation omitted).

**¶14** Luis argues the restaurant incident was not harassment because it would not have caused a reasonable person to be seriously alarmed, annoyed, or harassed. *See* A.R.S. § 12-1809(T)(1)(a). On December 25, Karla was at a restaurant with two friends. She did not tell Luis what she was doing that day or where she was. But Luis arrived knowing Karla was there (it was not a chance encounter) and filmed Karla while announcing that her children were waiting at home. Luis admitted he intended to ask Karla to come home and to film the interaction while she was out with friends. The court found Luis had "no legitimate purpose" for his actions. Considering the totality of the testimony and the court's finding that Luis lacked a legitimate purpose, we conclude a reasonable person in Karla's shoes would have been seriously alarmed, annoyed, or

harassed by this incident. And the evidence supports that Karla was in fact seriously alarmed and annoyed. The restaurant incident was one act of harassment.

**¶15**        As explained, an injunction against harassment under § 12-1809 requires at least two acts of harassment. Luis next argues the superior court erred because it found—at most—only one act of harassment. Luis argues Karla did not prove her version of the courtyard incident, so we should disregard that incident in our analysis. But we conclude there was sufficient evidence to find the courtyard incident was a second act of harassment.

**¶16**        Luis admitted going to Karla's home on December 30, though he denied pounding on her door. Karla testified Luis pounded on the door, had no reason to visit her other than to scare her, and that she was terrified. The court did not say what it thought took place. But nothing in § 12-1809 requires a superior court to *expressly* find two acts of harassment. It issued an injunction, which implies it found the evidence supported at least two acts of harassment. *See State v. Trostle*, 191 Ariz. 4, 22 (1997) (we presume the superior court knows the law and applies it when making decisions); *Fuentes v. Fuentes*, 209 Ariz. 51, 55–56 ¶ 18 (App. 2004) (we presume the court considered all the admissible evidence). So the premise of Luis' argument—that the court's brief discussion about the courtyard incident means it found against Karla—is mistaken.

**¶17**        The court heard conflicting testimony about what occurred during the courtyard incident. Based on Karla's testimony alone, there was substantial evidence from which the court could conclude that the courtyard incident occurred like Karla claimed and was a second act of harassment. Luis' conflicting testimony does not negate substantial evidence. *See In re $26,980.00 U.S. Currency*, 199 Ariz. 291, 295 ¶ 9 (App. 2000) (factual findings are not clearly erroneous if supported by substantial evidence, even if conflicting evidence also exists).

**¶18**        But even if the court disbelieved Karla's version of events, there was still substantial evidence to find the courtyard incident harassing. Luis did not deny he was at Karla's home unannounced; nor did he offer any legitimate reason for being there. Luis did not explain how Karla knew he was at her home if he did not at least knock on the door. The restaurant incident occurred just five days earlier, meaning Luis, without having spoken to Karla in years, showed up to her location unannounced and uninvited twice in five days. Moreover, at the time of the courtyard incident, police had just removed Luis' son from the home for violating an

order of protection.  So regardless of whose testimony the superior court believed, it could reasonably find that the courtyard incident was a second act of harassment.

**¶19**        The superior court did not abuse its discretion in affirming the injunction because "there is substantial evidence to support" its decision.  *See Prudential Ins. Co. of Am.*, 153 Ariz. at 370.  Because the restaurant and courtyard incidents are sufficient to affirm, we need not address whether the vehicle incident was a third act of harassment.

## CONCLUSION

**¶20**        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:              JR