[Nos. 29472-5-I; 29501-2-I. Division One. May 16, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID ALVAREZ, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lang, Deputy,* for respondent.

BECKER, J. — May a defendant be convicted under the criminal antiharassment act of 1985 for a single threat? That question is raised by David A. Alvarez, a juvenile at the time of his two separate convictions under the act.

Alvarez contends that the act requires proof of repeated threats demonstrating a pattern of harassment and that the trial court erred in each case by finding him guilty of harassment based on a single, isolated act. He also challenges the sufficiency of the evidence establishing in each case that his conduct placed the person threatened in "reasonable fear" that the threat would be carried out. We note at the outset that the State tried each case against Alvarez separately on its own facts.

We conclude that Alvarez can be convicted of harassment for a single threat. We affirm one of his convictions, and we remand the other to determine whether the court found the element of reasonable fear present under the circumstances.

## Case One

Alvarez's first conviction under the act resulted from certain events on December 7, 1990. His neighbor of 5 years,

Pamela Koenig, had returned home from work to eat her lunch. From her second floor bedroom window, she saw Alvarez next door in his back yard where his family kept a pigeon loft. She was approximately 25 to 30 feet away from him, and they were separated by a 6- to 7-foot-high wooden fence.

King County animal control authorities had put the Alvarezes on a schedule to reduce the number of pigeons they kept on the property. David said he went outside that day to get rid of a sick pigeon, because he did not want to take the time to take care of it. He broke the pigeon's neck by twisting it, then put the bird on the ground. The bird was still "flopping around like a chicken with its head cut off", so David chopped its head off with a shovel.

Koenig said she saw Alvarez take the pigeon from the loft, throw it on the ground and beat it with a shovel. At this point Koenig, from her window, said to Alvarez, "That's a start". Alvarez responded, "Shut up, Bitch, or I'll take you out, too". Koenig testified that as Alvarez said this, he held the decapitated pigeon torso over his head. Alvarez heard Koenig say that he "better keep on going" because he had "a lot more to kill before the deadline".

Koenig said she was extremely fearful as a result of the exchange, and she called the police. Koenig admitted that Alvarez never made any movement toward her. Still, she felt the threat was credible because he had verbally harassed her in the past. She testified that she understood his statement to mean that " 'I will kill you.' And based on what he had just done, I was not convinced that he wasn't capable of killing me." Koenig said the incident left her "emotionally just shaken" so that she could not return to work that day.

The State charged Alvarez with one count of cruelty to animals and one count of harassment stemming from this incident.[1] The juvenile court found Alvarez not guilty of the

---

[1] Based on another incident that occurred when a King County inspector visited the premises, the State charged Alvarez with two additional counts of cruelty to animals, for which the court found him guilty. Alvarez does not appeal the decision on those counts.

first charge of cruelty to animals after hearing expert testimony that "circle dislocation", or breaking the bird's neck, is a humane way to dispatch a pigeon. The court found Alvarez guilty on the harassment count, and he appeals.

## Case Two

Alvarez's second conviction for harassment resulted from his conduct during a "severe behavior disorder" class in the special education department at Shorecrest High School. For about 2 years, Alvarez had been in a class taught by David Paul.

On March 27, 1991, Alvarez came to class during the fourth period. Paul refused to excuse Alvarez for his absence during the first three periods. After some heated conversation between the two, Alvarez asked Paul for permission to telephone his father, which Paul granted. Alvarez spoke to his father on the telephone in the office next to the classroom. He then gave the telephone to Paul, walked back into the classroom, sat down, and continued what Paul considered to be a "tirade". Paul heard him make several threats, including mention of dynamite and of burning Paul's house down.

Nancy Hart, Paul's instructional assistant, was in the classroom when Alvarez made these comments. She said Alvarez told her that Paul's "fucking ass was dead". Alvarez also said:

> he was going to put Drano in his drinks or in his food and "watch it eat away his fucking apple." That he was going to burn his house down to the ground and watch it. He also said that he better watch out when he starts his car. He'll put dynamite in it and watch it blow up.

Hart tried to talk to Alvarez and calm him down.

After Alvarez's threats, Paul said he became "agitated and concerned". That evening he locked his lawnmower gasoline container in the garage as a precaution. Paul reported this incident to the assistant principal, who reported it to the principal. The principal in turn made the decision to contact the police.

Alvarez was charged with one count of harassment. The juvenile court found him guilty, and he appeals.

### ONE THREAT OR REPEATED THREATS?

 As a preliminary matter, the State contends we should reject Alvarez's entire appeal because he did not object to the entry of the trial court's findings of fact and conclusions of law and did not assign error to the findings and conclusions pursuant to RAP 10.3(g). These two contentions are without merit. Alvarez has not challenged specific findings of fact; rather, he claims that insufficient evidence exists to convict him under the language of the statute. Sufficiency of the evidence for a conviction is a question of constitutional magnitude that can be raised for the first time on appeal. *Seattle v. Slack*, 113 Wn.2d 850, 859, 784 P.2d 494 (1989). Moreover, RAP 10.3(g) does not require a party to assign error to a conclusion of law.

The State also contends Alvarez cannot argue on appeal that the criminal antiharassment act requires repeated threats because he did not raise this issue below.

 Although we generally will not consider an issue raised for the first time on appeal, we will exercise our discretion to review the intent of the criminal antiharassment act in this case because the issue will likely recur.[2] *See State v. Sanders*, 66 Wn. App. 380, 385, 832 P.2d 1326 (1992).

Alvarez was convicted pursuant to RCW 9A.46.020, which states in relevant part:

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury in the future to the person threatened or to any other person; or

(ii) To cause physical damage to the property of a person other than the actor; . . .

. . . .

. . . and

---

[2]The defendant in another case simultaneously before this court, *State v. Parkins*, cause 30346-5-I, urged us to adopt the same interpretation of the criminal antiharassment act, based on the same authorities, RCW 9A.46.010 and *State v. Smith*, 111 Wn.2d 1, 759 P.2d 372 (1988).

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

This section is immediately preceded by a statement of legislative intent:

The legislature finds that the prevention of serious, personal harassment is an important government objective. *Toward that end, this chapter is aimed at making unlawful the repeated invasions of a person's privacy by acts and threats which show a pattern of harassment* designed to coerce, intimidate, or humiliate the victim.

The legislature further finds that the protection of such persons from harassment can be accomplished without infringing on constitutionally protected speech or activity.

(Italics ours.) RCW 9A.46.010.

Alvarez argues that his convictions are improper because each involved only one threat instead of "repeated invasions . . . by acts and threats which show a pattern of harassment". As a case demonstrating a pattern of harassment, Alvarez cites *State v. Smith*, 111 Wn.2d 1, 759 P.2d 372 (1988), where the defendant was found guilty under the same statute, RCW 9A.46.020.

In *Smith*, the defendant appeared at the front door of the victim's home, grabbed the victim by the throat and dragged her outside, while making several threats against her, including death threats. At one point, Smith pushed the victim into his car, showing her a rifle lying on the back seat. *Smith*, at 4. The court found Smith guilty of harassment, simple assault, and criminal trespass. Smith appealed the harassment conviction, contending the phrase "[w]ithout lawful authority" in RCW 9A.46.020(1)(a) was unconstitutionally vague and therefore void.

In the course of rejecting this challenge, the court observed:

The harassment statute is part of a multifaceted remedial scheme the Legislature established to protect citizens from harmful harassing behavior. Two other criminal harassment statutes, already in place at the time RCW 9A.46.020 was enacted, address aggression and intimidation motivated by bigotry or other prejudices, RCW 9A.36.080 ("malicious harassment"), and certain forms of harassment, intimidation, torment or embarrassment effected by telephone, RCW 9.61.230. In addi-

tion, observing that the problem of harassment is one of increasing severity, the Legislature just last year established mechanisms to improve civil antiharassment protection. RCW 10.14. Washington law thus provides a "full spectrum of legal remedies, both civil and criminal, legal and equitable" designed "to provide meaningful relief in the *myriad situations where harassment occurs.*" Note, *A Remedial Approach to Harassment,* 70 Va. L. Rev. 507, 514 (1984).

(Italics ours.) *Smith,* 111 Wn.2d at 3.

While *Smith* describes more egregious facts than in this case, it does not limit the application of the statute to egregious cases. The court in *Smith* recognized that harassment assumes many forms and degrees, all of which the Legislature has attempted to address. The distinctions between the facts in *Smith* and those in this case do not persuade us to reverse Alvarez's convictions.

Turning to the language of the statute, Alvarez contends we must read RCW 9A.46.010 and RCW 9A.46.020 together and if we do, we must necessarily conclude that the statute does not criminalize an "isolated" threat.

RCW 9A.46.010 is a statement of legislative intent. RCW 9A.46.020 is an operative section setting forth the elements of the crime of harassment. The intent section speaks in the plural, declaring the aim of "making unlawful the repeated invasions of a person's privacy by acts and threats" showing a "pattern of harassment". RCW 9A.46.010. The elements section, in contrast, unambiguously describes what is necessary for conviction: one act is sufficient. Alvarez contends the Legislature's true intent is to be found in the first section, while the State contends it is carried out in the second section.

■ In construing any statute, our duty is to give effect to the intent of the Legislature. *State v. Johnson,* 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). We determine legislative intent not by unduly emphasizing any one section of a statute but rather by examining the statute as a whole. *State v. Hansen,* 122 Wn.2d 712, 717, 862 P.2d 117 (1993).

■ Working in favor of the construction proposed by Alvarez is the principle that penal statutes must be construed "so

that only conduct which is clearly within the statutory terms is subject to punitive sanctions." *Johnson*, 119 Wn.2d at 172. We must ensure that a conviction based on a single threat is clearly within the statutory terms, but we need not adopt "a forced, narrow, or overstrict construction which defeats the intent of the legislature". *State v. Cann*, 92 Wn.2d 193, 197-98, 595 P.2d 912 (1979).

■ Working in favor of the construction proposed by the State is the principle that a statement of legislative intent, used by the Legislature as a preface to an enactment, lacks operative force in itself, although it may serve as an important guide in understanding the intended effect of operative sections. *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975).

■ Washington courts at times have relied on a legislative intent statement for help in interpreting an otherwise ambiguous or vague statute. *See, e.g., Roy v. Everett*, 118 Wn.2d 352, 356-59, 823 P.2d 1084 (1992). But this, and other cases cited by Alvarez, do not permit reliance on a statement of legislative intent to override the unambiguous elements section of a penal statute or to add an element not found there. Indeed, we are advised that it is safer not to add to or subtract from the language of a statute unless this is imperatively required to make the statute rational. *State v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982).

■ The elements section of the criminal antiharassment act of 1985 is neither ambiguous nor vague in requiring only one act or threat rather than multiple acts or threats to support a conviction. We will not substitute the intent section's reference to plural "acts and threats" for the straightforward definition of the crime found in RCW 9A.46.020, on the basis of a perceived inconsistency between that section and the preamble in RCW 9A.46.010.

The opposite result would mean that a person targeted by a chilling threat and placed "in reasonable fear that the threat will be carried out", RCW 9A.46.020(1)(b), would have to wait for a second threat or a pattern of threats before the State could provide protection. Such a construction would

defeat the Legislature's more general purpose, stated in the intent section as "the prevention of serious, personal harassment". RCW 9A.46.010. We believe the statute aims at preventing repeated acts of harassment by making unlawful a single act.

When construing statutory provisions, "related statutes should be considered in relation to each other and whenever possible harmonized". *State v. Walter*, 66 Wn. App. 862, 870, 833 P.2d 440 (1992), *review denied*, 121 Wn.2d 1033 (1993). In harmony with our construction, RCW 9A.46.030 refers to "threat" in the singular:

> Any harassment offense *committed as set forth in RCW 9A.46.020* . . . may be deemed to have been committed where the conduct occurred or at the place from which *the threat or threats* were made . . ..

(Italics ours.) RCW 9A.46.030 confirms that the Legislature, as one would expect, intended the definition section (RCW 9A.46.020) and not the intent section (RCW 9A.46.010) to set forth the elements of the crime. RCW 9A.46.040 confirms the statute's primary concern with prevention by providing that, when authorizing the release of a defendant charged with harassment before trial, the court may issue no-contact orders because of the "likelihood of repeated harassment directed at those who have been victims of harassment in the past".

Statutes that relate to the same subject matter or having the same purpose should be read in connection with each other. *State v. Houck*, 32 Wn.2d 681, 684-85, 203 P.2d 693 (1949). A comparison of the criminal antiharassment act with its related civil counterpart provides further support for the construction we adopt. Although the two statutes have virtually identical preambles, the civil statute defines "unlawful harassment" as "a knowing and wilful *course of conduct* directed at a specific person which seriously alarms, annoys, or harasses such person, and which serves no legitimate or lawful purpose." (Italics ours.) RCW 10.14.020(1). "Course of conduct" means "a pattern of conduct composed of

a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 10.14.020(2).

■ Given the omission of any reference to "course of conduct" in RCW 9A.46.020, we must presume that the Legislature consciously chose to criminalize a single act rather than a course of conduct. "It is elementary that when the Legislature uses certain language in one instance, and different language in another, there is a difference in legislative intent." *State v. E.J.H.*, 65 Wn. App. 771, 775, 830 P.2d 375 (1992).

Parenthetically, we note the practical difficulties inherent in distinguishing a pattern of threatening conduct from a single act or threat. As illustrated by Alvarez's own statements, spoken words do not readily lend themselves to such analysis. Can the trier of fact find multiple threats in spoken words accompanied by a gesture? If so, the incident with the pigeon was more than a single threat. Can the factfinder perceive several threats in the same outburst? If so, Alvarez's speech about Drano, dynamite, and arson made three threats, not one. The hairsplitting that would result from Alvarez's proposed construction of the statute is another factor persuading us not to adopt it.

### Sufficiency of the Evidence

If one threat can support a harassment conviction under the statute, Alvarez contends the proven facts are nevertheless insufficient to convict him because the evidence in the record shows that neither victim's fear was reasonable.

■ ■ The element at issue, RCW 9A.46.020(1)(b), requires that the "person by words or conduct places the person threatened in reasonable fear that the threat will be carried out." The analogous malicious harassment statute, RCW 9A.36.080, likewise requiring the State to prove that a threat placed a victim in reasonable fear, provides an objective standard by which to evaluate the victim's state of mind. *State v. Talley*, 122 Wn.2d 192, 213, 858 P.2d 217 (1993). We apply the same standard here. Assuming the evidence establishes the victim's subjective fear, the issue is

whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt, using an objective standard, that the victim's fear in each case was reasonable. *See State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). This is an important limiting element in the statute, requiring the trier of fact to consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions.

### Case One

The trial court entered finding of fact 6:

> Koenig was extremely fearful because she says she believed he would carry out his threat. She believed this because of what she had just seen, which she described as cruelly beating a bird into the ground. She was upset and was unable to return to work.

The court's conclusion of law 4 states:

> The court believes Koenig about what respondent said to her. The meaning of those words is plain. They were spoken under circumstances which made it a threat of bodily harm.

The trial judge made no explicit finding on the ultimate fact as to whether Koenig's fear was reasonable. Arguably the court's conclusion is tantamount to such a finding, but given its ambiguity, it is also possible that the trial court meant to recognize only Koenig's subjective fear.

Asking us to follow *State v. Pena*, 65 Wn. App. 711, 829 P.2d 256 (1992), Alvarez contends that an omitted finding of an essential element requires an automatic reversal because the double jeopardy clause prohibits giving the State a second chance to muster evidence. Declining to follow *Pena*, we adhere instead to the rule that vacation and remand, not reversal, is normally the appropriate disposition when the trial court omits any determination as to an element of the crime charged. *State v. Jones*, 34 Wn. App. 848, 851, 664 P.2d 12 (1983).

We have limited the *Jones* rule to the extent that it permits the parties to present additional evidence on remand to support an omitted finding. *State v. Souza*, 60 Wn. App. 534,

539, 805 P.2d 237, *review denied*, 116 Wn.2d 1026 (1991). Instead, where the record lacks supporting evidence, we must reverse. *State v. Austin*, 65 Wn. App. 759, 762, 831 P.2d 747 (1992).

We cannot say the record is devoid of any evidence to support the omitted finding of Koenig's reasonable fear, an ultimate fact on an element of harassment that was contested at trial. There is evidence going both ways.

Koenig had no reason to believe Alvarez meant her to watch him kill the pigeon. In fact, he had done so while under orders from the animal control authorities to reduce his pigeon population, before he realized Koenig was watching. Although Koenig testified that Alvarez had verbally harassed her in the past, on this occasion it was Koenig who initiated the verbal exchange with Alvarez about the pigeon. She reasonably would have expected her remark — "That's a start" — to provoke a negative reaction.

Still, it was within the province of the trial court to determine as an ultimate fact whether Alvarez's response — "Shut up, Bitch, or I'll take you out, too" — placed Koenig in reasonable fear under the circumstances. While considerable distance and a fence separated the antagonists physically, the statute does not require that the harm feared by the victim be immediate. Alvarez held up the headless torso of the pigeon as he spoke to Koenig, which could be seen as a powerful and unmistakable, if symbolic, threat to her personal safety. Sufficient evidence exists, without permitting the State to supply additional evidence, which the trial court may weigh in deciding whether to enter the omitted finding.

Accordingly, we remand Alvarez's conviction in case one to give the trial court the opportunity to decide whether the omitted finding should be entered.

### Case Two

Alvarez argues that if the harassment statute applies, the State failed to prove his teacher, David Paul, actually feared Alvarez would carry out any threat. Alvarez contends Paul's statement that he was "agitated and concerned" does not

satisfy the element of reasonable fear because it does not even show that Paul was subjectively afraid. Alvarez argues that his teacher knew he had problems controlling his behavior and would reasonably have regarded the threats as all in a day's work, a student tirade to be ignored and forgotten. Alvarez also argues that by reporting the incident and relocating his lawnmower gasoline, Paul was doing no more than taking a precaution, and precautions are often taken without fear.

The trial court's undisputed findings of fact take these considerations into account and clearly address each element of the crime. Unchallenged findings of fact are verities on appeal. *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

The findings show that Paul had been Alvarez's teacher for about 2 years, indicating Paul had extensive experience with Alvarez and other similarly behaviorally disturbed students. Paul also testified that threats of this type were uncommon. The court found that Paul, in addition to saying he was "agitated and concerned" after the threats, reported the incident to the assistant principal, and that evening, as a "precaution", he locked his lawnmower gasoline container inside his garage. Taking such a precaution is completely consistent with reasonable fear.

The court also concluded that, while Alvarez was in a special education class, his conduct went beyond the allowances that might be made in such a class, and his statements "could reasonably be taken very seriously by a victim" (an ultimate fact as to the element of reasonable fear). A rational trier of fact, viewing the evidence in the light most favorable to the State, could find beyond a reasonable doubt that Alvarez's threats placed Paul in reasonable fear for his personal safety.

## Conclusion

In summary, we hold that the legislative statement of intent in RCW 9A.46.010 does not modify the elements defining the crime of harassment in RCW 9A.46.020 so as to require repeated threats demonstrating a pattern of harass-

ment. One threatening act is sufficient to support a harassment conviction if the other elements are proven.

The conviction in case one omits a finding on the essential element of reasonable fear, requiring a remand to the trial court. The finding of reasonable fear in case two is supported by the evidence, and that conviction is affirmed.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.

Review granted at 125 Wn. 2d 1001 (1994).