# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 66747-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER WITHDRAWING |
| v. | ) | OPINION AND SUBSTITUTING |
| | ) | OPINION, AND |
| MUHAMET M. SUMAJ, | ) | WITHDRAWING ORDER |
| | ) | AMENDING OPINION |
| Appellant. | ) | |

The Respondent, State of Washington, having filed a motion to change the opinion filed on July 23, 2012, to replace the full name of the victim with the victim's initials, and the panel having determined that the motion should be granted and the opinion be withdrawn and a substitute unpublished opinion shall be filed replacing the name of the victim with initials, now therefore it is hereby

ORDERED that the opinion filed July 23, 2012, be withdrawn and a substitute unpublished opinion is filed. It is hereby

FURTHER ORDERED that the Order Amending Opinion filed on March 25, 2013, is withdrawn.

DATED this _____ day of _____, 2013.





IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 66747-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MUHAMET M. SUMAJ, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

SCHINDLER, J. — A jury convicted Muhamet M. Sumaj of felony harassment and malicious harassment of A.M., Count I and Count II; and one count of felony harassment of Donald Tidd, Count III. For the first time on appeal, Sumaj argues the charging document omitted an essential element of the crime of felony harassment. Sumaj also argues insufficient evidence supports the conviction for felony harassment of Tidd. We affirm.

## FACTS

Neighbours is a nightclub on Capitol Hill that caters to the gay and transgender community. The main entrance to the club is in an alley that runs between East Pike Street and East Pine Street.

A.M. is a male-to-female transgender woman. A.M. frequently went to Neighbours on Sundays. A.M. testified that she saw Muhamet Sumaj each time she

was at the club but never interacted with him.[1] A.M. said that Sumaj "always stared at me, so I tried to stay away from him" because "I didn't get a good vibe."

On Sunday, January 24, 2010, A.M. drove to Neighbours and parked her car on East Pike Street close to the alley. At about 11:30 p.m., A.M. left the club to check on her car. As A.M. started walking back to the club, Sumaj walked by and said, "I like real ladies. I hate fags. You're a fucking nigger, and I would never go for you." When A.M. asked why Sumaj came to Neighbours if he "hate[d] fags," Sumaj told her, "I'm going to cut your throat."

A.M. said that she felt "threatened because he was serious." A.M. testified that Sumaj came toward her, "getting closer and closer, throwing fists, and I was backing off." Sumaj screamed, "[F]ucking nigger, I will kill you wherever you go. You're a nigger. I find you." A.M. started running towards the club's entrance in the alley. Sumaj followed A.M.[2] and continued to yell obscenities at her.

Donald Tidd is the head of security for Neighbours. Tidd was standing at the door to the club and saw A.M. run into the alley shouting, "[H]e's trying to kill me, he said he's going to kill me." When Tidd asked what was happening, A.M. pointed at Sumaj and repeated, "[H]e's trying to kill me." Tidd testified that A.M. "seemed terrified."

Tidd told Sumaj to stop. Tidd got between A.M. and Sumaj and Sumaj lunged at A.M. over Tidd's shoulder, yelling "faggot." As Sumaj continued yelling and trying to push past him to reach A.M., Tidd radioed for additional security personnel to help. Tidd told A.M. to go inside the club "to get away from the situation."

---

[1] We refer to A.M. by pronoun in the female gender consistent with the parties' briefing.

[2] Sumaj was "not running."

2

Security personnel Matthew Harrison and Freddy Gonzalez responded to Tidd's radio call. Tidd again told Sumaj to leave. Sumaj refused. Harrison testified that he and Tidd "made a barrier" in front of Sumaj and walked toward him. Sumaj then backed away and the security personnel followed him down the alley toward East Pike Street. Sumaj yelled, "[T]his [is] not your problem," and "tried to fight." Gonzalez testified that Sumaj called Tidd a "faggot" and said, "I don't give a fuck who you are."

When Sumaj reached the end of the alley, he screamed, "I'm going to go to my car and get my gun and kill you." Tidd immediately called 911. Tidd told the 911 operator that he was walking away from Sumaj as Sumaj approached because he did not want to get shot.

Sumaj ran across the street but within moments, returned. A few minutes later, Seattle Police Officers Adam Julius and Matthew Blackburn responded. Tidd was standing at the entry of the alley and Sumaj was standing less than half a block away at the corner of East Pike Street and Harvard Avenue. The officers placed Sumaj under arrest.

The State charged Sumaj with felony harassment of A.M., Count I; malicious harassment of A.M., Count II; and felony harassment of Tidd, Count III.

Officer Julius, Officer Blackburn, Tidd, Harrison, Gonzalez, and A.M. testified at trial, and the court admitted a recording of the 911 call.

The jury convicted Sumaj as charged. The court imposed a standard range sentence.

ANALYSIS

Charging Document

For the first time on appeal, Sumaj asserts the charging document did not allege as an essential element of the crime of felony harassment that he made a "true threat."

A charging document must allege "[a]ll essential elements of a crime, statutory or otherwise," to provide a defendant with sufficient notice of the nature and cause of the accusation against him. State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10). The primary purpose of the rule is to give the defendant sufficient notice of the charges so he can prepare an adequate defense. State v. Tandecki, 153 Wn.2d 842, 846-47, 109 P.3d 398 (2005).

Where, as here, the defendant has failed to challenge the sufficiency of an information at trial and instead raises his challenge for the first time on appeal, we liberally construe the document in favor of validity. State v. Brown, 169 Wn.2d 195, 197, 234 P.3d 212 (2010). In making that determination, we engage in a two-part inquiry: (1) Whether the essential elements appear in any form, or can be found by any fair construction, in the information; and (2) if so, whether the defendant nonetheless was actually prejudiced by the inartful language used. Brown, 169 Wn.2d at 197-98.

Here, the information charging Sumaj with the crime of felony harassment alleged:

COUNT I
. . . .
That the defendant MUHAMET M SUMAJ in King County, Washington, on or about January 24, 2010, knowingly and without lawful authority, did threaten to cause bodily injury immediately or in the future to [A.M.], by threatening to kill [A.M.], and the words or conduct did place said person in reasonable fear that the threat would be carried out.
. . . .

4

## COUNT III

That the defendant MUHAMET M SUMAJ in King County, Washington, on or about January 24, 2010, knowingly and without lawful authority, did threaten to cause bodily injury immediately or in the future to Donald Tidd, by threatening to kill Donald Tidd, and the words or conduct did place said person in reasonable fear that the threat would be carried out.

Under 9A.46.020(1), a person commits harassment if, "[w]ithout lawful authority, the person knowingly threatens" to cause "bodily injury immediately or in the future to the person threatened or to any other person," and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out."

A statute that makes a threat a crime must proscribe only "true threats." State v. Schaler, 169 Wn.2d 274, 283-84, 236 P.3d 858 (2010). Our supreme court defines a "true threat" as:

> "[A] statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life" of another person.

State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)[3] (quoting State v. Williams, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)). "The speaker of a true threat need not actually intend to carry it out. It is enough that a reasonable speaker would foresee that the threat would be considered serious." Schaler, 169 Wn.2d at 283.[4]

In State v. Tellez, 141 Wn. App. 479, 170 P.3d 75 (2007), we held that the true threat concept is definitional and "limits the scope of the essential threat element," but "is not itself an essential element of the crime." Tellez, 141 Wn. App. at 484; see also State v. Atkins, 156 Wn. App. 799, 802, 236 P.3d 897 (2010); State v. Allen, 161 Wn.

---

[3] (Internal punctuation and quotation marks omitted.)
[4] (Internal quotation marks and citation omitted.)

5

App. 727, 755-56, 255 P.3d 784 (2011), review granted, 172 Wn.2d 1014, 262 P.3d 63 (2011).

In Schaler, the defendant challenged the jury instructions defining the crime of felony harassment. Schaler, 169 Wn.2d at 281-82. Because the definition of threat was not limited to a true threat, the court concluded the jury could have erroneously convicted Schaler based on "something less than a 'true threat' " and reversed. Schaler, 169 Wn.2d at 287-88.

But the supreme court in Schaler expressly notes that it did not reach the question of whether a true threat is an essential element of the crime of felony harassment that must be alleged in the charging document. Schaler, 169 Wn.2d at 288, n.6.

> The situation is not identical to omitted-element cases. Whether the constitutionally required mens rea is an "element" of a felony harassment charge is a question that we need not decide. (We note that there is a Court of Appeals opinion on point, State v. Tellez, 141 Wn. App. 479, 170 P.3d 75 (2007), but we express no opinion on the matter.)

Schaler, 169 Wn.2d at 288, n.6.[5]

We adhere to our decision in Tellez and reject the argument that the convictions should be reversed because the information did not allege "true threat" as an essential element of the crime of felony harassment.[6]

---

[5] (Emphasis in original.)

[6] Further, the information expressly alleged that Sumaj knowingly threatened to kill both A.M. and Tidd and the words or conduct placed them in reasonable fear that the threat would be carried out. Consistent with Schaler, the language in the charging document "satisfies the 'know or foresee' mens rea element" as to the result of intending the hearer's fear. Allen, 161 Wn. App. at 755. "Knowingly threaten" may be "understood to require that the speaker be aware that his words or actions frightened the hearer—after all, how can one knowingly threaten without knowing that what one says is threatening to another?" Schaler, 169 Wn.2d at 286.

<u>Sufficiency of the Evidence, Count III</u>

Sumaj also claims insufficient evidence supports the jury finding Sumaj guilty of the charge of felony harassment of Tidd. In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>State v. Townsend</u>, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). A challenge to the sufficiency of the evidence admits the truth of the evidence. <u>State v. Salinas</u>, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." <u>State v. Thomas</u>, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Further, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." <u>Salinas</u>, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. <u>State v. Delmarter</u>, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person commits harassment if the person knowingly threatens to cause "bodily injury immediately or in the future to the person threatened," and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1). A person is guilty of felony harassment if the person harasses another person by threatening to kill the person threatened. RCW 9A.46.020(2)(b).

Sumaj contends the evidence was insufficient to prove Tidd reasonably feared that Sumaj would carry out the threat to kill him.[7] The trier of fact uses an objective

_____

[7] The to-convict instruction for the felony harassment of Tidd charged in Count III states, in pertinent part, "[t]hat the words or conduct of the defendant placed Donald Tidd in reasonable fear that the threat to kill would be carried out."

7

standard to determine whether the victim's fear that the threat will be carried out is reasonable. State v. Alvarez, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994). Importantly, "the nature of a threat depends on all the facts and circumstances." State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

Viewing the evidence in the light most favorable to the State, the testimony established that Tidd reasonably feared that Sumaj would carry out the threat to kill him. Sumaj "had his fist balled" and was "very aggressive" when Tidd told him to leave the alley. Sumaj "put his hands on" Tidd when Sumaj tried to get to A.M. When Sumaj said he was "going to go to my car and get my gun and kill you," Tidd immediately called 911 and told the operator that he had "a threat of gun violence" from a man "going to a car to get his gun." Tidd then tells the 911 operator that Sumaj is "walking up right now" and "coming directly at us. . . . I'm walking away, I don't want to get shot."

The testimony Sumaj relies on to argue that the evidence shows A.M. was the target of his threat is taken out of context and does not support his argument.

Tidd testified that he felt the threat was directed at him, rather than the other two security personnel. Tidd also testified that Sumaj "was angry enough to do something, so I took that threat seriously."

> Q.    Now, why did you feel -- if the defendant is interacting with [Harrison] and [Gonzalez], why did you feel that the threat was directed at you?
> . . . .
> A.    The volume at which he screamed. I felt like he was intending for someone beyond standing in front of him to hear.
> Q.    And who were the people standing at the front of the club?
> A.    Myself, the alleged victim. . . .
> Q.    Have you ever been threatened before?
> . . . .
> A.    Yes.
> Q.    Have you taken every threat you received seriously?

A.    No.

Q.    Why did you take this threat seriously?

A.    The gentleman seemed very angry. He had already showed aggression. He had already put his hands on me and tried to get at the lady.

Q.    Now, what did you decide to do at this point when he runs off?

A.    Once he ran off, I immediately took my phone out and called 911.

Q.    Cell phone?

A.    Yes.

Q.    And what, if anything, happened while you were on the phone with 911?

A.    While I was speaking to the 911 operator, I was down at the end of the alley at this point on Pike. I saw him coming back.

Q.    And how did that make you feel?

A.    A little scared.

Q.    Why?

A.    Well, if someone says they are going to get a gun and come back, seeing them come back makes you believe they have a gun and they are coming back to shoot you.

Because sufficient evidence supports the jury conviction of felony harassment of Tidd, we affirm.

WE CONCUR: