# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 77606-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| HARJINDER SINGH KABARWAL, | |
| Appellant. | FILED: April 15, 2019 |

APPELWICK, C.J. — Kabarwal appeals his convictions for felony harassment and intimidating a judge. He argues that the State failed to prove beyond a reasonable doubt that (1) the victims were placed in actual and reasonable fear that a threat would be carried out, and (2) his statements constituted a "true threat." We affirm.

## FACTS

In April 2016, Harjinder Kabarwal was a defendant in a jury trial at the King County District Court in Shoreline. He had been charged with driving under the influence (DUI), physical control, and driving with a suspended license. The jury found Kabarwal guilty of physical control. The court set Kabarwal's sentencing for June, but later continued his sentencing to July 7. Judge Marcine Anderson presided over the trial, and Carmen McDonald was the prosecuting attorney.

In May and June 2016, Kabarwal was a patient at Valley Cities Behavioral Health, a community-based outpatient treatment center in Federal Way. Around May 12, 2016, Kabarwal met with Dhanapati Neopaney, a care-coordination intern at Valley Cities. Neopaney had conducted Kabarwal's initial case management assessment. The May 12 meeting was a regular case management counseling session. During the session, the two discussed how Kabarwal was feeling about his pending case in Shoreline.

Kabarwal told Neopaney that he was very frustrated with his prosecuting attorney, and that he wanted to harm that attorney. Kabarwal said, "'I'm very frustrated with the ongoing prosecution, and if I have to go to jail, then I'll kill my prosecuting attorney.'" Kabarwal did not name the prosecutor, but referred to the prosecutor as "she" and said he wanted to kill her because she did not hear him very well. After consulting his supervisor, Neopaney reported Kabarwal's statements to the Federal Way Police Department.

On June 6, 2016, Olivia Uhart, a psychiatric nurse practitioner at Valley Cities, saw Kabarwal for a follow up visit. During the visit, Uhart observed that Kabarwal was exhibiting "suicidality," thoughts about death, and "homicidality," plans or thoughts to harm other people. Uhart testified that this was abnormal for Kabarwal. She testified that "[Kabarwal] mentioned wanting to harm people in his court case that he had been dealing with," and part of his intent was for him to die in the process. Specifically, he called the judges and attorneys in his case liars, and said that was why he wanted to harm them. Due to the nature of the threat, Uhart consulted her supervisor and reported Kabarwal's statements to police.

2

On June 16, 2016, Kabarwal visited Valley Cities again and met with William Greenwood, a mental health clinician. This was the first time the two had met. During the session, Kabarwal brought up his DUI case. Kabarwal stated he intended to "'do like what happened in Orlando'" if he was sentenced to serve time in prison on July 7. He further stated that he would "'feel bad having to hurt innocent people, but I have to do it.'" And, he stated, "'They have ruined my life.'" The previous weekend, there had been a shooting at an Orlando, Florida nightclub, during which a single shooter killed a large number of people, and injured many more.

Greenwood noted that Kabarwal was not interested in engaging in the problem solving process. After the session ended, Greenwood spoke with his supervisor about Kabarwal's statements, and reported them to the Federal Way Police Department.

On May 19, 2016, Annette Scholl, a major crimes detective for the city of Federal Way, was assigned the case involving Kabarwal's statements. That day, she contacted McDonald, the prosecutor handling Kabarwal's DUI case, and told her about Kabarwal's statements to Neopaney. She spoke with McDonald two more times during the investigation.

On July 7, 2016, while Judge Anderson was getting ready to preside over Kabarwal's sentencing, members of her court staff entered her chambers and told her that she could not go into the courtroom. After not being allowed in the courtroom, she learned that Kabarwal had threatened to kill her and had been

arrested that day.[1] On July 12, Detective Scholl notified Judge Anderson of Kabarwal's statements.

On September 28, 2017, the State charged Kabarwal with felony harassment of McDonald (count 1), felony harassment of Judge Anderson (count 2), and intimidating a judge (count 3).[2] A jury found him guilty on all counts. Kabarwal appeals.

## DISCUSSION

Kabarwal makes two arguments. First, he argues that the State failed to prove that McDonald and Judge Anderson actually and reasonably feared that a threat would be carried out, an element of felony harassment. Second, he argues that the State failed to prove that his statements constituted a true threat, a requirement under the felony harassment and intimidating a judge statutes.

The sufficiency of the evidence is a question of constitutional law that this court reviews de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's

---

[1] In her testimony, Judge Anderson could not remember if it was court staff who told her Kabarwal had threatened to kill her and had been arrested, but stated that it was probably court staff. She then testified that she thought her court manager told her, and that she read the probable cause statement for his arrest.

[2] The State first charged Kabarwal with felony harassment of McDonald on June 29, 2016. In a November 14, 2016 first amended information, the State added the charge for felony harassment of Judge Anderson. In a September 28, 2017 second amended information, the State last added the charge for intimidating a judge.

evidence and all inferences that reasonably can be drawn therefrom." Id. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. See State v. Johnston, 156 Wn.2d 355, 365-66, 127 P.3d 707 (2006).

I. Felony Harassment

Kabarwal argues that the State failed to present sufficient evidence to sustain his felony harassment convictions. Specifically, he argues that the State failed to prove that McDonald and Judge Anderson actually and reasonably feared that a threat would be carried out. And, he argues that his statements did not constitute a true threat.

RCW 9A.46.020(2)(b)(ii) makes it a felony for a person to knowingly threaten to kill the person threatened, or any other person. The statute also makes it a felony to knowingly threaten to cause bodily injury to a criminal justice participant because of an action taken or decision made by that participant during the performance of his or her official duties. RCW 9A.46.020(1)(a)(i), (2)(b)(iv).

According to the jury instructions, to convict Kabarwal of felony harassment of McDonald, the State had to prove beyond a reasonable doubt that, between May 12, 2016 and June 21, 2016:

> (i) The defendant knowingly threatened to kill Carmen McDonald immediately or in the future; and
>
> (ii) That the words or conduct of the defendant placed Carmen McDonald in reasonable fear that the threat to kill would be carried out.

In the alternative, the State had to prove beyond a reasonable doubt that,

(i) The defendant knowingly threatened on May 12, 2016 to cause bodily injury immediately or in the future to Carmen McDonald, and

(ii) (a) That Carmen McDonald was a criminal justice participant who was performing his or her official duties at the time the threat was made; or

    (b) That Carmen McDonald was at the time a criminal justice participant and the threat was made because of an action taken or decision made by Carmen McDonald during the performance of her duties;

(iii) That the words or conduct of the defendant placed Carmen McDonald in reasonable fear that the threat would be carried out; and

(iv) That the fear from the threat was a fear that a reasonable criminal justice participant would have under all the circumstances.

Under each alternative, the State also had to prove that the defendant acted without lawful authority and that the threat was made or received in Washington.[3]

To convict Kabarwal of felony harassment of Judge Anderson, the State had to prove beyond a reasonable doubt,

    (1) That between June 16, 2016 and July 7, 2016, the defendant knowingly threatened to kill Marcine Anderson immediately or in the future;

    (2) That the words or conduct of the defendant placed Marcine Anderson in reasonable fear that the threat to kill would be carried out;

    (3) That the defendant acted without lawful authority; and

    (4) That the threat was made or received in the State of Washington.

---

[3] The verdict form does not indicate under which alternative the jury found Kabarwal guilty.

A. Reasonable Fear

Relying on State v. C.G., 150 Wn.2d 604, 80 P.3d 594 (2003), Kabarwal argues that the State failed to prove that McDonald and Judge Anderson actually and reasonably feared that a threat would be carried out.

If the evidence in a case establishes the victim's subjective fear, "the issue is whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt" that the victim's fear was reasonable. State v. Alvarez, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994), aff'd 128 Wn.2d 1, 904 P.2d 754 (1995). To determine whether the victim's fear was reasonable, the trier of fact uses an objective standard. Id. at 260.

In C.G., a high school student became disruptive in class when asked about a missing pencil. C.G., 150 Wn.2d at 606. The student, C.G., became angry, used profanity, kicked a study carrel, moved her chair, and made other noise. Id. The teaching assistant called in the school's vice principal, Haney, who asked C.G. to leave the classroom with him. Id. C.G. went with Haney after some resistance, and continued to yell obscenities. Id. Haney then called another teacher to assist him, at which point C.G. told Haney, "'I'll kill you Mr. Haney, I'll kill you.'" Id. at 606-07. At C.G.'s trial for felony harassment, Haney testified that C.G.'s threat caused him concern, and that, based on what he knew, she might try to harm him or someone else in the future. Id. at 607. The trial court found C.G. guilty of felony harassment of Haney. Id.

On appeal, C.G. argued that there was insufficient evidence that Haney was placed in reasonable fear that C.G. would kill him. Id. She asserted that it was not

7

enough for the State to prove that Haney reasonably feared bodily injury would be inflicted. Id. The State Supreme Court agreed. Id. at 612. The court stated that, to obtain a misdemeanor conviction based on the threats in RCW 9A.76.020(1)(a), the State must prove that the threat made and the threat feared are the same. Id. at 608-09. Although the "threat to kill" is not listed in subsection (1)(a), the court determined that the legislature meant to proscribe those threats because "it expressly provided that a threat to kill results in a felony." Id. at 609. Thus, like misdemeanor threats, "the fear in the case of the threat to kill must be of the actual threat made—the threat to kill." Id. The court found that there was no evidence Haney was placed in reasonable fear that C.G. would kill him, and reversed the conviction. Id. at 610, 612.

### 1. McDonald

On May 19, 2016, Detective Scholl first notified McDonald of Kabarwal's statements to Neopaney. At trial, when asked if she took Kabarwal's threat "to kill the prosecutor" seriously, McDonald responded, "I did." When asked if Kabarwal had indicated when his threat would be carried out, she responded, "I believe that his intention was the sentencing hearing." McDonald was removed from Kabarwal's case. On the day of his sentencing hearing, she left the courthouse when his case was coming up.[4]

---

[4] Specifically, McDonald was asked, "So were you present at the sentencing hearing in June?" She responded, "I was present at the courthouse, but when his case was coming up, I left the courthouse." Kabarwal's sentencing was originally set for June, but was later continued to July 7. It is unclear whether McDonald was referring to the original date of his sentencing, or to July 7.

Here, there is evidence that McDonald was placed in subjective fear based on the threats Kabarwal made—that he would kill the attorney who prosecuted his trial, wanted to harm the attorneys in his case, and would "do like what happened in Orlando" if he was incarcerated on July 7. And, unlike C.G., the threats made and the threats feared are the same. Viewed in the light most favorable to the State, the evidence was sufficient to establish that McDonald actually feared that Kabarwal would carry out his threats.

The evidence supports the conclusion that it was reasonable for McDonald to fear the threats. At trial, McDonald was also asked what went through her mind when she heard Kabarwal's threat. She responded,

> Well, I recalled Mr. Kabarwal and I recalled how upset he was, and I recalled that there was some pretty significant mental instability there. And that, coupled with his use of alcohol, it's not unheard of in my line of work that someone may self-medicate mental illness with alcohol.
>
> The fact that he was seeking therapy and that he had gone through one therapist and on to another therapist and was making these specific threats to me, frankly, I've got small kids and, you know, when someone gets really angry, I can't just necessarily brush that aside and hope that it's not true. I didn't discount it, based upon his condition, at all.

McDonald stated that she was familiar with Kabarwal's use of alcohol based on "the facts of his physical-control case" and the information she was privy to in preparation for that trial.

In May through July of 2016, McDonald's office was in the courthouse, directly across the hallway from the courtroom. Her office also had a window, which faced the parking lot.

9

In her testimony, McDonald recalled how upset Kabarwal had been. She cited his multiple threats to more than one therapist, and stated that she believed he intended to carry out those threats at his sentencing. And, her office was across the hallway from the courtroom, with a window that faced the parking lot. Viewed in the light most favorable to the State, the evidence was sufficient to establish that McDonald reasonably feared that Kabarwal would carry out his threats.

### 2. Judge Anderson

On July 7, 2016, Judge Anderson was about to take the bench for Kabarwal's sentencing hearing when her court staff stopped her. She then learned that Kabarwal had threatened to kill her, had threatened to do "like Orlando" in the courthouse, and had been arrested. At trial, she testified that she did not know if Kabarwal was sentenced on July 7.

When asked if she understood immediately the reference to the shooting in Orlando, Judge Anderson responded that she did.[5] And, when asked if she thought that Kabarwal would do what he said he was going to do, she responded, "Yes. And I still do." She stated that the Orlando reference made her feel "[s]cared of what could happen to the people I work with, the public who might come into our courthouse, and scared for my o[wn] personal safety, as well." While she had been threatened before, she stated, "This seems a little bit more surreptitious, a little bit more sneaky, a little bit more something that I really needed to be concerned

---

[5] In her testimony, she stated, "There were a lot of people who were shot by a single person, and many people died and many people were injured and it was a complete and total surprise to all the people who were there."

about." She sought a protection order against Kabarwal, and, closer to trial, sought an anti-harassment order against him.[6]

Here, there is evidence that Judge Anderson was placed in subjective fear based on the threats Kabarwal made—that he wanted to harm the judge in his case, and would "do like what happened in Orlando" if he went to prison on July 7. And, unlike C.G., the threats made and the threats feared are the same. Viewed in the light most favorable to the State, the evidence was sufficient to establish that Judge Anderson actually feared that Kabarwal would carry out his threats.

The evidence supports the conclusion that it was reasonable for Judge Anderson to fear the threats. In her testimony about the nature of Kabarwal's threats, Judge Anderson cited the fact that Kabarwal had made threatening statements regarding his case to more than one person. She also stated,

> Based on the evidence that I heard at his trial about his mental-health condition, his traumatic brain injury, the types of medication he was on, the quantity of medication that he was on, the possibility that he was an alcoholic just given the high [blood alcohol concentration], the fact that he was mixing alcohol with all of these other chemicals, I really couldn't rely on his judgment to not do what he said he was going to do.

At the Shoreline courthouse in July 2016, bags were hand checked and did not go through an x-ray machine. Where Judge Anderson sat in her chambers on

---

[6] Kabarwal points to Judge Anderson's failure to obtain an anti-harassment order until months after his threats, but she already had a protection order in place. She had asked the King County Prosecutor's Office to get an order of protection in this case, and an order of protection was then assigned. Judge Anderson did not obtain the anti-harassment order until closer to trial, because she understood that protection orders connected with criminal cases last only as long as the criminal case is active.

the first floor,[7] she was visible from outside, and her window did not have bulletproof glass.

Judge Anderson testified that she immediately understood the reference to the Orlando shooting. She cited what she knew about Kabarwal from trial, and the fact that he had made threatening statements to more than one person. She was prevented from entering her courtroom to preside over his sentencing hearing. And her chambers window, through which she was visible from outside, did not have bulletproof glass. Viewed in the light most favorable to the State, the evidence was sufficient to establish that Judge Anderson reasonably feared that Kabarwal would carry out his threats.

B. True Threat

Kabarwal argues that the State also failed to prove a true threat under the reasonable person standard, thereby violating the First Amendment.[8]

To avoid violating the First Amendment, a statute criminalizing threatening language must also be construed "as proscribing only unprotected true threats." State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013). Here, the trial court instructed the jury that

> To be a threat, a statement must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be

---

[7] The Shoreline courthouse is on one floor.

[8] Kabarwal also argues that the State failed to prove a true threat under the subjective intent standard. He recognizes that Washington does not apply this standard, but "raises this issue to preserve it in the event the U[nited] S[tates] Supreme Court expressly resolves the conflict against Washington's reasonable person standard." Because Kabarwal does not actually argue that the subjective intent standard should apply, we do not address this argument.

12

interpreted as a serious expression of intention to carry out the threat rather than as something said in jest, idle talk, or political argument.

"[T]he First Amendment does not require that the speaker actually intend to carry out the threat in order for a communication to constitute a true threat." State v. Kilburn, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004). Rather, "[i]t is enough that a reasonable speaker would foresee that the threat would be considered serious." State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

When examining the sufficiency of the evidence of a true threat, the First Amendment demands more than "the usual process of assessing whether there is sufficient evidence in the record to support the trial court's findings." Kilburn, 151 Wn.2d at 49. "We must independently review the crucial facts in the record, i.e., those which bear on the constitutional question." Id. at 52. In true threat cases,

> [I]t is not just the words and phrasing of the alleged threat that matter, but also the larger context in which the words were uttered, including the identity of the speaker, the composition of the audience, the medium used to communicate the alleged threat, and the greater environment in which the alleged threat was made.

State v. Kohonen, 192 Wn. App. 567, 580, 370 P.3d 16 (2016).

Kabarwal told Neopaney that he was very frustrated with the ongoing prosecution in his case, and that if he had to go to jail he would kill his prosecuting attorney. He later stated that he wanted to harm the judge and attorney in his case, and would "do like what happened in Orlando" if he was sentenced to prison on July 7. He stated that he would feel bad having to hurt innocent people, but that he had to do it.

Kabarwal underscored his threats to kill or cause bodily injury to McDonald by specifically referring to the "prosecuting attorney," whom he called "she," and

stating he would "do like what happened in Orlando" if he went to prison on a specific date, July 7. See State v. Locke, 175 Wn. App. 779, 793, 307 P.3d 771 (2013) ("menace of the communication . . . further heightened by its specificity"). McDonald was the prosecuting attorney at Kabarwal's trial, and July 7 was the date of his sentencing hearing. Days before Kabarwal's Orlando statements, a single person had shot and killed many people at an Orlando nightclub. Therefore, Kabarwal's statements suggest a plan to shoot his prosecuting attorney at his July 7 sentencing hearing.

Kabarwal underscored his threat to kill Judge Anderson by stating that he wanted to harm the judge in his case specifically. Judge Anderson presided over Kabarwal's trial, and had planned to preside over his July 7 sentencing. Thus, his Orlando statements also suggest a plan to kill people, including the judge, in the courtroom at his sentencing hearing.

And, Kabarwal made his Orlando statements to Greenwood after meeting him for the first time in a counseling session. Thus, the two did not have a preexisting relationship or communications from which Kabarwal might have expected that Greenwood would not take his statements seriously. See Locke, 175 Wn. App. at 793.

Under these circumstances, a reasonable person in Kabarwal's position would foresee that his statements would be interpreted as a serious expression of intention to carry out his threats against McDonald and Judge Anderson. Thus, the evidence was sufficient to establish a true threat.

II.   Intimidating a Judge

Kabarwal argues next that the State failed to present sufficient evidence to sustain his conviction for intimidating a judge. Again, he argues that the State failed to prove that his statements constituted a true threat.

To convict a defendant of intimidating a judge under RCW 9A.72.160, the State must prove (1) that "a person direct[ed] a threat," either directly or indirectly; (2) to a judge; and (3) "because of a ruling or decision" by that judge "in any official proceeding." Here, the trial court instructed the jury that to convict Kabarwal, the State must prove beyond a reasonable doubt:

(1) That on June 16, 2016, the defendant directed a threat, directly or indirectly, to a judge, and

(2) the threat was made because of a ruling or decision of the judge of any official proceeding, or the threat was made in an attempt to influence a ruling or decision of the judge in any official proceeding, and

(3) That the threat was made or received in the State of Washington.

We construe RCW 9A.72.160 as prohibiting "only unprotected true threats." See Allen, 176 Wn.2d at 626.

As established above, Kabarwal underscored his threat against Judge Anderson by specifically referring to his sentencing date, July 7, and stating that he would "do like what happened in Orlando" if he went to prison on July 7. Days before he made that statement, a single person had shot and killed many people at an Orlando nightclub. Under these circumstances, a reasonable person in Kabarwal's position would foresee that his statement would be interpreted as a

15

serious expression of intention to carry out his threat. Thus, the evidence was sufficient to establish a true threat.

We affirm.

Applewick, C.J.

WE CONCUR: