NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

SAMANTHA TRAPP, *Plaintiff/Appellee,*

*v.*

BENJAMIN FLYNN, *Defendant/Appellant.*

No. 1 CA-CV 22-0125
FILED 11-15-2022

---

Appeal from the Superior Court in Maricopa County
No.  CV 2021-019095
The Honorable Mary Collins Cronin, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Alexander R. Alpad, Phoenix
*Co-Counsel for Defendant/Appellant*

Bernabe Rice Law PLLC, Gilbert
By Nicole E. Bernabe,
*Co-Counsel for Defendant/Appellant*

Grand Canyon Law Group LLC, Mesa
By Angela C. Poliquin. Ryan H. McPhie
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1        Benjamin Flynn ("Flynn") appeals the superior court's injunction against harassment ("IAH") issued in favor of Samantha Trapp ("Trapp") and her 15-year-old daughter.  Because Flynn has not shown the court abused its discretion, we affirm.

## BACKGROUND

¶2        Samantha Trapp is a roommate and friend of Flynn's ex-wife. Flynn and his ex-wife share custody of their two daughters, ages 10 and 7. In September 2021, Flynn reported to law enforcement that sexual abuse was possibly occurring between his 7-year-old daughter and Trapp's daughter.  Flynn had learned that they would often take showers together and sometimes sleep in the same bed.  After conducting interviews, police officers did not discern any evidence of inappropriate touching.  Flynn later filed a report with the Arizona Department of Child Safety ("DCS") based on the same concern.

¶3        On December 12, 2021, Flynn sent four text messages to Trapp, telling her to stop "talking badly" about him in front of his daughters and accusing her of "emotional abuse."  He also told Flynn he was uncomfortable with her and her daughter being around his children, and he threatened to contact the police again.  In his text messages and a subsequent voicemail, Flynn insisted that Trapp confirm to him she read his text messages.

¶4        The next morning, Flynn left another voicemail asking Trapp to confirm both receipt of his text messages and her plan to abide by his requests.  He also said that if he did not hear back from her, he would contact Trapp's father to have him call her to confirm receipt of the messages.  Later, Flynn sent a text message to Trapp stating he had called her father; Flynn again asked her for confirmation.  That same day, Flynn called the police for a welfare check on his children and reported his ex-wife for custodial interference, claiming she was not allowing phone calls

between Flynn and his daughters. Flynn then sent another text message telling Trapp that DCS had opened a case, that she needed to "keep the hell away from my kids" and that he would have both Trapp and her daughter "prosecuted to the fullest extent of the law."

**¶5**        On December 16, 2021, Trapp filed an IAH petition based on the police and DCS reports as well as the communications she received on December 12 and 13. The superior court issued the IAH, ordering Flynn not to have any contact with Trapp or her daughter except through attorneys, legal process, or court hearings. After being served with the IAH, Flynn sent two emails to his ex-wife that included statements about Trapp and her daughter, questioning Trapp's intellect and calling her daughter a sexual predator. He also told his ex-wife that if Trapp did not drop the injunction, Trapp would be "prosecuted to the fullest extent of the law."

**¶6**        Flynn contested the IAH and requested a hearing, which was held on January 10, 2022. After receiving exhibits and hearing testimony from both parties, the court upheld the IAH, finding that one of the text messages Flynn sent on December 12 was abusive and that each of the communications he made contained "some sort of threat." The court also expressed its concerns about the two emails Flynn sent after he was served with the injunction. The court concluded that Trapp and her daughter were harassed by Flynn and that his communications served "no legitimate or lawful purpose." Flynn timely appealed and we have jurisdiction under A.R.S. § 12-2101(A)(5)(b).

## DISCUSSION

**¶7**        We review a court's order granting an IAH for an abuse of discretion, *LaFaro v. Cahill*, 203 Ariz. 482, 485, ¶ 10 (App. 2002), which may occur if the court commits an error of law while reaching a discretionary conclusion or when the record lacks competent evidence to support the order, *Mahar v. Acuna*, 230 Ariz. 530, 534, ¶ 14 (App. 2012). We view the evidence in the light most favorable to upholding the court's ruling, *id.* at 530, ¶ 2, and we do not reweigh the evidence, *Clark v. Kreamer*, 243 Ariz. 272, 276, ¶ 14 (App. 2017).

**¶8**        A court may issue an IAH if it finds there is "reasonable evidence of harassment . . . by the defendant during the year preceding the filing of the petition or that good cause exists to believe that great or irreparable harm would result" if the IAH is not granted. A.R.S. § 12-

1809(E).  "Harassment" is defined as "[a] series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose."  A.R.S. § 12-1809(T)(1)(a).

¶9         Flynn argues the text messages and voicemails he sent to Trapp were not a series of acts sufficient for harassment, but instead "attempts to deliver a single message."  A minimum of two incidents constitutes a "series of acts." *LaFaro*, 203 Ariz. at 486, ¶ 14.  Flynn sent multiple text messages and left two voicemails over the two-day period in December.  These were multiple acts, regardless of the similarity in content of the messages, and therefore qualify as a "series of acts" under § 12-1809(T)(1)(a).

¶10        Flynn also contends his communications to Trapp served a legitimate purpose because they addressed "some issues that are happening in her house."  It is within a trial court's discretion to determine if certain communications "had no legitimate purpose." *See* A.R.S. § 12-1809(T)(1)(a); *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455 (1982) (recognizing that appellate courts will not reverse "discretionary factual findings unless the record clearly establishes that the trial court was incorrect").  In the text messages sent on December 12, Flynn accused Trapp and her daughter of emotionally abusing his daughters and he threatened to report Trapp and her daughter to the police.  He also disparaged Trapp's parenting and belittled her intellect.  The subsequent voicemails and text messages repeatedly asked for confirmation that Trapp received his messages and that she would abide by his requests.  The court acted within its discretion in deciding that these communications were seriously annoying or harassing and had no legitimate purpose.

¶11        Flynn contends he should have been permitted to testify about his custody dispute with his ex-wife to prove the legitimate purpose behind his communications to Trapp.  And by motion on appeal, he asks us to take judicial notice of temporary orders that were issued by the family court on December 22, 2021, several days after the preliminary IAH was granted.  But Flynn does not point to any specific testimony he would have offered at the hearing.  Further, he was able to generally inform the court of an ongoing "custody battle" between he and his ex-wife.  Even so, Flynn's messages make it plain what his purposes were: (1) he wanted Trapp to stop speaking negatively about him in front of his children, (2) he thought that some of the interactions between Trapp's child and his daughter were

inappropriate, (3) he was considering additional reporting to police, and (4) he needed to know Trapp had read the messages. Because Flynn has not shown how information from the custody dispute would have been different from these purposes, the court did not abuse its discretion in declining to allow testimony on that topic. Thus, we deny Flynn's motion to take judicial notice.

¶12 Flynn argues that protecting children is a legitimate purpose and that through his communications with Trapp, he was trying to protect his children from a perceived threat. Although Flynn's reasons for communicating with Trapp may have initially served that purpose, it does not mean later messages served legitimate purposes. Instead, each communication must be viewed in context, and it was the superior court's role to decide whether Trapp's repeated messages no longer served legitimate purposes and became harassing or seriously annoying. Though Flynn's initial expression of concern about his daughters' wellbeing may have been legitimate, the cumulation of messages, escalation to frenzied texts and calls, and reaching out to other people to contact Trapp went well beyond the initial legitimate purpose. *See Trotter v. Paiano*, 1 CA-CV 19-0109, 1 CA-CV 19-0110, 2020 WL 639195, at *1, 3, ¶ 15 (Ariz. App. Feb. 11, 2020) (mem. decision) (noting that appellants cited "no legal authority to support the proposition that some legitimate communication may inoculate conduct that would otherwise constitute harassment"). Viewing all the communications in context, the record supports the court's determination that they were seriously annoying, harassing, and served no legitimate purpose.

¶13 Flynn contends his statements about pursuing legal action did not constitute harassment and were not "threats" because "[a]ccess to the courts is a fundamental right." *Madison v. Groseth*, 230 Ariz. 8, 14, ¶ 17 (App. 2012). The court's description of some of Flynn's communications as threats does not mean the court found that the comments were unlawful or that Flynn was precluded from pursuing legal action. Regardless, whether a defendant has committed harassment is evaluated based on the language of § 12-1809(T)(1)(a). Thus, a threat may or may not fall within the scope of the statute depending on the circumstances of each case. Here, the court acted within its discretion in deciding that Flynn's communications as a whole were annoying or harassing and without a legitimate purpose.

¶14 Flynn also argues the superior court improperly relied on the emails he sent to his ex-wife. The court admitted the emails for "the limited purpose that it is addressing Ms. Trapp and her daughter and what he

intends to do." Even assuming the court abused its discretion, the error was harmless. *See* Ariz. R. Civ. P. 61 "Unless justice requires otherwise, an error . . . is not grounds for . . . disturbing a judgment or order."); *see also* Ariz. R. Prot. Order P. 2 (stating that the Arizona Rules of Civil Procedure apply to protective orders when not inconsistent with the rules). From the other evidence presented at the hearing—text messages, voicemails, and testimony—the court could reasonably conclude that Trapp was seriously annoyed or alarmed at the accusations of abuse, threats of legal action, and repeated communications requesting confirmation of receipt of those messages.

¶15 Flynn further contends the court erred by stating from the bench that Flynn is not permitted to communicate about Trapp or her daughter with his ex-wife. To the extent that statement "is binding without being included in the formal order," Flynn asserts the court erred because § 12-1809(T)(1)(a) does not authorize limiting communications with third parties. If the court sought to impose additional restrictions beyond what is covered by the IAH, the court arguably erred. But any error is harmless because the limitations of Flynn's communications are established by the IAH, not a court's statements from the bench.

¶16 Finally, to the extent Flynn asserts that the court improperly considered a video, he provides no evidence to support the assertion. Exhibit 30, admitted in evidence, is a flash drive containing audio recordings of the two voicemails. On appeal, Flynn's counsel discovered that the exhibit also includes a video. Nothing in the record shows the parties or the superior court intended that Exhibit 30 would include the video recording and we have not considered it.

**CONCLUSION**

¶17 We affirm the injunction against harassment.



AMY M. WOOD • Clerk of the Court
FILED:    AA