IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**BRIANA HERNANDEZ,**
*Plaintiff/Appellee,*


v.


**LUIS ARTURO LOARCA,**
*Defendant/Appellant.*

_____

No.   CV-25-0161-PR
**Filed April 27, 2026**

_____

Appeal from the Superior Court in Maricopa County
The Honorable John R. Doody, Judge Pro Tempore
No.   FC2024-051159

_____

Opinion of the Court of Appeals,
Division Two
571 P.3d 371 (App. 2025)

**VACATED AND REMANDED**
_____


COUNSEL:

William H. Doyle, Brandon D. Millam, Emily S. Morgan (argued), Doyle
Hernandez Millam, Phoenix, Attorneys for Briana Hernandez

Florence M. Bruemmer (argued), Law Office of Florence M. Bruemmer,
P.C., Anthem, Attorney for Luis Arturo Loarca

_____

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and CRUZ joined.

――――――――――

CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        Briana Hernandez and Luis Loarca had a past romantic relationship that resulted in the birth of their daughter ("Daughter"), who was ten years old at the time of the events at issue.   Their relationship soured, and the two have spent years embroiled in contentious family court proceedings concerning Daughter.   Relevant here, Hernandez obtained an order of protection against Loarca based on allegations that he engaged in domestic violence by harassing her at Daughter's school, where Hernandez was also employed.   *See* A.R.S. § 13-3601(A)(2) (including harassment by one parent against the other as an act of domestic violence).   Specifically, she alleged that Loarca harassed her by making negative statements concerning her to Daughter's teacher and the school principal.

¶2        To constitute harassment, a perpetrator's actions must be "directed at" the victim.   *See* A.R.S. § 13-2921(E).   We address here whether Loarca's statements to the teacher and the principal outside her presence were "directed at" Hernandez and therefore qualified as harassment.   We conclude that statements made to third parties can be "directed at" the victim when they are designed to provoke an adverse consequence against the victim.   The trial court did not abuse its discretion here by finding that Loarca's communications were intended to cause Hernandez trouble at her job and were therefore "directed at" her.

## BACKGROUND

¶3        In the fall of 2023, Hernandez was employed as a paraprofessional by Phoenix Legacy Traditional School, which Daughter also attended.   Daughter's teacher told Hernandez that Daughter was struggling with reading and needed to improve her grades.   According to Hernandez, she later mentioned this conversation to Loarca and commented that perhaps Daughter needed a more experienced teacher. Thereafter, Loarca met with Daughter's teacher at a parent-teacher conference.   Hernandez alleges that during that discussion, Loarca

misrepresented what she had told him, instead telling the teacher that Hernandez "despises" her and "did not think she was a good teacher." Hernandez learned of this encounter in a later meeting with the teacher, which the principal arranged so the two could smooth things over. The teacher was "extremely unhappy" and "quite uncomfortable" during the meeting. Hernandez explained to the teacher and the principal that Loarca had miscommunicated her comments, and that ended the matter.

¶4 In March 2024, Daughter transferred to Goodyear Legacy Traditional School, and Hernandez started working there as a paraprofessional. Soon after, Daughter came to Hernandez during school hours concerning a book report Daughter was working on. According to Hernandez, Loarca had switched the book at the last minute, leaving Daughter stressed about her ability to complete the assignment on time. Consequently, Hernandez helped Daughter by giving her notes on the book and "otherwise helping her finish the report." Loarca found out. Rather than discussing the matter with Hernandez, he took Hernandez's notes and other information she had given to Daughter and sent it to the school principal, who supervised Hernandez. As a consequence, the principal provided Hernandez with a written warning for plagiarism, admonished Hernandez that she could not use "company time" to help Daughter, and told her that she should not visit Daughter during school hours.

¶5 In May, the superior court granted Hernandez's ex parte petition for an order of protection against Loarca. *See* A.R.S. § 13-3602(A). Following a contested hearing at which both parties testified, the court continued the order in effect. *See* § 13-3602(L). Notably, the court found that Loarca's handling of the matters did not reflect concern for Daughter or protection of his role as final decision maker in educational matters but were instead calculated to inflict harm on Hernandez by causing trouble for her at work.

¶6 The court of appeals reversed, concluding that Loarca's actions were not "directed at" Hernandez as required by § 13-2921(E). *Hernandez v. Loarca*, 571 P.3d 371, 374 ¶¶ 12–13 (Ariz. App. 2025). In its view, Loarca's actions were directed at third parties—the immediate recipients of his communications. *Id.* at 375 ¶¶ 17–18. In light of this resolution, the court did not address Loarca's additional arguments that the order of protection improperly modified the family court's legal decision-making orders and violated his First Amendment rights. *See id.* ¶ 19.

3

¶7　　　　We granted Hernandez's subsequently filed petition for review to decide whether communications made between a defendant and a third party can be "directed at" the plaintiff under § 13-2921(E).　We have jurisdiction under article 6 section 5(3) of the Arizona Constitution.

## DISCUSSION

¶8　　　　We review the trial court's decision to grant an order of protection for an abuse of discretion.　*Michaelson v. Garr*, 234 Ariz. 542, 544 ¶ 5 (App. 2014).　A court abuses its discretion if it misinterprets the law in reaching its conclusions.　*See Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 253 Ariz. 499, 503 ¶ 8 (2022).

### A. Section 13-2921(E) Contemplates That Conduct Or Communications May Be "Directed At" A Person Through A Third Party If Designed To Provoke An Adverse Consequence For That Person.

¶9　　　　A trial court may issue an order of protection to "restrain[] a person from committing an act included in domestic violence."　A.R.S. § 13-3602(A).　A person engages in domestic violence by committing an enumerated criminal offense against someone with whom the person has a qualifying relationship, which includes having a child in common. *See* § 13-3601(A)(2).　One such offense is harassment under § 13-2921. *See* § 13-3601(A).

¶10　　　　Section 13-2921(A) provides, in relevant part, that "[a] person commits harassment" by "knowingly and repeatedly" contacting or communicating with "another person . . . in a manner that harasses."　To "harass" means to engage in conduct "directed at" a specific person that "would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed" and that in fact causes such distress. § 13-2921(E).　The question here is whether subsection (E) requires communications be made directly to the victim or whether communications to third parties may also qualify.　We conclude that communications may be "directed at" a victim even when conveyed to a third party when they are designed to provoke an adverse consequence against the victim.

¶11　　　　We begin with the statutory text.　*In re Riggins*, 257 Ariz. 28, 31 ¶ 12 (2024).　We read that text in context and alongside related provisions.　*Id.*　If the text has a plain meaning, we apply it unless doing

so would produce an absurd result or a constitutional violation. *Id.* If the text is reasonably susceptible to more than one interpretation, we consider secondary interpretive tools, including legislative history and the consequences of competing constructions. *Id.*

¶12 The phrase "directed at" has a plain meaning. In 2022, when § 13-2921(E) was last amended, to "direct" meant, in relevant part, to aim or point toward a person or thing. *See Direct*, Black's Law Dictionary (11th ed. 2019); *Direct*, Oxford English Dictionary 3.a (3d ed. 2000); *Direct*, Merriam-Webster, https://www.merriam-webster.com/dictionary/direct (last visited Apr. 6, 2026). This definition focuses on the target of the communication, not its immediate recipient. Accordingly, a communication may be "directed at" a victim even if conveyed to a third party, so long as the victim is its intended target. If such communications are designed to provoke an adverse consequence for the victim that would seriously alarm, annoy, humiliate, or mentally distress a reasonable person in the victim's position, and in fact do so, they constitute harassment. § 13-2921(E). In short, § 13-2921(E) regulates conduct based on its target, not its transmission path.

¶13 Our interpretation is reinforced by subsection (A)(1), which provides that a person can "harass" by "caus[ing] a communication with *another person*," not only with the victim. (Emphasis added.) By not limiting the communication's recipient to the victim, subsection (A)(1) illustrates that communications may be directed at a victim through intermediaries. § 13-2921(A)(1).

¶14 The broader statutory scheme supports this interpretation. Other subsections in § 13-2921 describe conduct that targets a victim through third parties. For example, subsection (A)(4) covers false reports about the victim to law enforcement, credit agencies, or social service agencies. Subsection (A)(5) addresses interference with utility services, which may involve communications to third-party actors. Reading subsection (E) to encompass third-party communications thus accords with the Legislature's evident intent to prohibit harassing conduct regardless of the means used to deliver it.

¶15 The court of appeals recently adopted this understanding in *Raber v. Wagner*, 571 P.3d 902 (Ariz. App. 2025). There, the defendant repeatedly sent email messages to the plaintiff's relatives, work colleagues, and other contacts, asking them, variously, to speak with the plaintiff on

her behalf, mediate a parenting dispute, and "knock some sense into" the plaintiff. *Id.* at 906 ¶ 12. The court held that § 13-2921 "expressly contemplates" harassment through third-party communications when those communications are designed to prompt action directed at the victim. *Id.* ¶ 13. Because the defendant sought to initiate actions and communications aimed at the plaintiff, her conduct was "directed at" the plaintiff. *Id.*

¶16 The court of appeals here distinguished *Raber* on the ground that Loarca did not explicitly request that third parties take action or communicate with Hernandez. *See Hernandez*, 571 P.3d at 374–75 ¶ 15. That distinction does not withstand scrutiny. *Raber* did not turn on the presence of an explicit request for action; it turned on whether the communications targeted the victim and were intended to provoke an adverse consequence. *See Raber*, 571 P.3d at 906 ¶ 13 ("Here, the record supports a determination that Wagner, through her communications with third parties including Raber's relatives and work colleagues, sought to initiate direct actions toward, and communications with, Raber.").

¶17 Just as making a false report to law enforcement or a credit or social service agency is designed to provoke adverse consequences against a victim without any explicit request for action, *see* § 13-2921(A)(4), so too can other communications made to third parties that target a victim. Limiting § 13-2921(E) to cases involving express solicitations would create an arbitrary loophole, permitting harassment through third-party communications designed to provoke adverse consequences so long as the speaker avoids expressly asking for those consequences. We see no principled basis for concluding, for example, that a person's false statement to a wife that her husband is having an affair is not "directed at" the husband, but becomes so only if the speaker adds that the wife should act against him. In both instances, the communication is designed to provoke an adverse consequence against the husband.

¶18 Importantly, not all communications to third parties that reveal unflattering information about another person are "directed at" that person. In *LaFaro v. Cahill*, 203 Ariz. 482 (App. 2002), for example, the court of appeals considered whether a defendant's statements describing the plaintiff as a "bigot," "fascist," and "homophobe," made to a third party but within the plaintiff's earshot, were "directed at" the plaintiff for purposes of Arizona's civil harassment statute, A.R.S. § 12-1809(T)(1)(a),

6

which closely parallels § 13-2921(E).[1]  *See LaFaro*, 203 Ariz. at 486 ¶ 13. The court did not rule out that some third-party communications may be "directed at" another person but concluded that the statements there were directed at the third party, not the plaintiff.  *See id.* & n.3.  We agree.  We further note that, unlike in *Raber*, the defendant's comments in *LaFaro* were not intended to provoke adverse consequences for the plaintiff, even if they may have diminished the third party's opinion of the plaintiff.

¶19        In sum, § 13-2921(E) turns on the target of the conduct or communication designed to provoke an adverse consequence against the victim, not to whom the communication is conveyed.        Thus, communications may be "directed at" a victim even when made to a third party.   But the statute is not boundless.   It reaches only those third-party communications that target the victim to provoke an adverse consequence and otherwise satisfy the statute's requirements.

### B.        The Trial Court Did Not Err By Finding That Loarca's Statements Were "Directed At" Hernandez.

¶20        Turning to the record here, we cannot say the trial court abused its discretion by finding that Loarca directed his communications with the teacher and the principal at Hernandez to provoke an adverse consequence against her.   Loarca argues that this case is more like the situation in *LaFaro* than the one in *Raber* because Hernandez was unaware of the communications when made, and he made the communications solely to advance Daughter's interests and protect his role as decision maker for Daughter's education, not to provoke a consequence against Hernandez.   The trial court, however, reached a different conclusion after assessing the parties' credibility and testimony at the evidentiary hearing. It found that despite Loarca's professed reasons for communicating with the teacher and the principal, his actions were in fact intended to inflict suffering on Hernandez.

¶21        The record supports that finding.   First, Loarca's statement to the teacher that Hernandez despised her and considered her incompetent supports the conclusion that he targeted Hernandez to provoke an adverse consequence in her workplace.   Nothing about those comments furthered

---

[1]  We cite to the current version of the civil harassment statute because it has not materially changed since the opinion in *LaFaro.*

Daughter's educational interests and thus appeared intended to undermine the parties' professional relationship. Indeed, the principal convened a meeting to address the resulting conflict.

**¶22** Second, Loarca's report to the principal that Hernandez improperly assisted Daughter with the book report likewise supports the inference that he sought to create problems for Hernandez with her supervisor. He made no effort to resolve the issue with Hernandez or Daughter's teacher before going directly to the principal. As the trial court found, Loarca effectively accused a staff member of dishonesty and plagiarism, making it likely that the principal would take adverse action against Hernandez. Thus, we cannot say the trial court abused its discretion.

**¶23** Finally, we point out that § 13-2921(E) is broadly written, and courts may struggle with applying it in some situations. Unlike its civil counterpart, § 13-2921(E) does not exclude from the definition of harassing behavior conduct or communications made for legitimate purposes. *Compare* § 13-2921(E) (requiring "conduct [that] in fact seriously alarms, annoys, humiliates or mentally distresses the person"), *with* § 12-1809(T)(1)(a) (requiring "conduct [that] in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose"). Because the trial court here found that Loarca did not make his communications for a legitimate purpose, we need not address this distinction. The Legislature, however, may wish to consider whether complaints made for legitimate purposes, even though designed to provoke an adverse consequence against another person, should nevertheless fall within the statute's reach. A broad application of this statute may also implicate the free-speech protections of our state and federal Constitutions, but that issue is not currently before us.

## CONCLUSION

**¶24** For the foregoing reasons, we vacate the court of appeals' opinion and remand the case back to that court to decide the remaining issues it did not yet decide.